## GUISE v. OLIVER.

LIEN: *On land, for digging well.*

A well is not an improvement within the meaning of the mechanic's lien law,. (Mansf. Dig., secs. 4402-4409,) and neither that statute or the act of 1868, (Mansf. Dig., secs., 4425-4440,) providing for laborer's liens, gives a lien on land for labor performed in digging a well, although the work is done under a contract with the owner of the land.

APPEAL from *White* Circuit Court.

M. T. SANDERS, Judge.

The appellants, *pro sese*.

Contend that laborers have a lien for digging a well under sec. 4402, Mansf. Dig.; 27 Ark., 568; 29 Ib., 597; Act July 25th, 1873; Mansf. Dig., secs. 4406–7; 32 Ark., 59. laborer's lien laws are liberally construed.  •

*J. N. Cypert*, for appellee.

Sec. 4409, Mansf. Dig., limits the lien to a *building,ten–*

Guise v. Oliver.

*ement* or *edifice.* A well is neither one or the other. This section limits and qualifies, sec. 4402.

These statutes are strictly construed. See authorities cited by appellants.

HUGHES, J.

Appellants filed their complaint in the White circuit court to assert a lien upon land owned in fee by appellee—the SE¼ of the SE¼ of sec 25, T. 8 N., R. 10 W., in said county—for work and labor performed by appellants by digging a well thereon, under contract with appellee, and for which appellee had executed, payable to the order of appellants, on or before the 1st of Nov., 1886, his promissory note for $50.35, on the face of which it is expressed that it was given "for labor on one well."

For a balance of forty dollars and thirty-five cents due upon the note, appellants sought to enforce a lien upon and sale of the land. Appellee interposed his demurrer to the complaint because, 1st, "The same does not state facts sufficient to constitute a cause of action."

2nd. "The complaint does not state facts sufficient to entitle plaintiff to a mechanic's lien."

This action was brought to fix a lien under the mechanic's lien law, the first section of which as embodied in Mansfield's Digest, being section 4402, provides that "Every mechanic, builder, artisan, workman, laborer or other person, who shall do or perform any work or labor upon or furnish any materials, machinery, or fixtures for any building, erection or other improvement upon land, including contractors, subcontractors, material furnishers, mechanics and laborers, under or by virtue of any contract, express or implied, with the owner or proprietor thereof, or his agent, trustee, contractor, or sub-contractor, upon complying with the provis-

ions of this act, shall have for his work or labor done, or materials, machinery or fixtures furnished, a lien upon such building, erection or improvement, and upon the land belonging to such owner or proprietor on which the same is situated, to secure the payment of such work or labor done, or materials, machinery or fixtures furnished.''

If, standing alone, this section could be construed to be broad enough to give a right to establish a lien upon land, and enforce the sale thereof for the satisfaction of a debt due for labor performed in digging a well, upon the land, it is certainly limited and qualified by section 4409 of the same act, (act of April 25th, 1873) which provides that ''all the right and title of the defendant to the land on which any building, tenement or edifice shall be erected, as well as to a convenient space around the same not exceeding two acres clear of the building, tenement or edifice, shall be subject to the liens filed by virtue of the provisions of this act, and such right and title shall be sold with the building, tenement or edifice as part of the property charged with the lien.''

LIEN:
For digging well.

It seems that the statute has given no lien upon land to secure payment for labor performed, save that character of labor coming strictly within its provisions, and that labor performed in digging a well does not come within the provisions of this act. A well is not an improvement that will warrant the assertion of a lien upon land to pay for digging it. The right to a lien on real estate ought not to be extended beyond the clear intention of the statute creating it. ''There is no common law lien of any kind upon real property.'' 2 Jones on Liens, sec. 1184.

Are appellants entitled to enforce a lien for their labor under the act of July 23d, 1868, which provides ''that labor ers who perform work and labor for any person under a

written or verbal contract, if unpaid for the same, shall have an absolute lien on the production of their labor for such work and labor.'' This act was partly construed in *Dano v. M. O. and R. R. R. R. Co.*, 27 Ark., 564, and also in *Taylor, Bradford & Co. v. Hathaway*, 29 Ark., 597.

In the former of these cases the action was brought to assert a lien for labor performed in grading a railroad, or roadbed. It was held in this case, that the word laborer, as used in this act, ''was intended to be understood according to its common acceptation,'' and to mean ''a man who does work that requires little skill, as distinguished from an artisan.'' It is also said in this case that ''this word 'all,' as it is used in this act is not to be construed literally as giving to every laborer a lien for his labor.'' And further that ''the appellant was a laborer on a railroad, and as such, is not and does not come within the class of laborers described in the law as being entitled to 'a lien on the production of their labor.''' * * * The tenth section of the act of July 23rd, 1868, reads as follows: ''When any real estate is to be sold under a lien for labor such as ditching, building levees, etc., the justice of the peace shall file a copy of the judgment rendered, in the county clerk's office immediately, and the county clerk shall place it in his judgment docket and cause the sheriff to sell such real estate, having given thirty day's notice of the same in the way the same is herein provided.'' This language looks like it was intended by the legislature that the real estate might be sold, for the payment of a laborer's lien given by the statute now under consideration. The language used in the section just quoted, imports that it was the intention of the legislature to give to persons employed to do ditching, or employed in the building of levees a lien on real estate for their labor.''* * *.

A railroad is neither a drain nor a levee in the common acceptation of the word. There is nothing in this act which intimates that the legislature intended it to be extended unless it is in the abbreviation "etc." * * * "The remedy afforded by this act is summary in its character, and to some extent, remedial, and at the same time contrary to the course of the common law. Remedial statutes should be construed liberally; not so, however, with summary statutes. This being true, we do not feel disposed to construe the abbreviation 'etc.,' to mean and include railroads."

Same.
In *Taylor, Bradfield & Co. v. Hathaway*, 29 Ark., 597, which was an action to assert a laborer's lien upon land for labor performed in clearing, improving, cultivating and building fences thereon or for like labor performed thereon, it was held, (Chief Justice English delivering the opinion of the court) that the lien did not exist under the statute, and an instruction, "that a lien only lies against the land for ditching and building levees and this only when the party works under a special contract for that purpose with the owner of the land," was held to be correct and proper to have been given by the trial court. A laborer seeking to assert a lien upon land for work and labor performed by him must bring his case strictly within the statute under which he claims the lien. There being no liens at common law upon real estate, statutes creating them are strictly construed.

Under our statutes, a laborer has no lien upon land for pay for a well dug by him thereon, though under contract with the owner of the land.

Affirmed.