Statement of the Case.
BREAUX, C. J.
Plaintiffs are grocers in the city of New Orleans.
The defendant is a sugar planter, and has a plantation store, and during the year sells goods and merchandise to his laborers. The plaintiffs sold goods on credit to the defendant, who made advances of those goods to the employes in making the year’s crop.
The defendant, indebted to plaintiffs for $7,519.12, confessed judgment on the 18th day of January, 1908.
By the confession and the judgment defendant sought to admit that the sum of $5,757.72 was secured by privilege on his 1907 crop.
The method followed to obtain evidence of the credit was: Defendant executed his notes in favor of the plaintiffs for amount •of the latter’s- indebtedness for groceries consigned to defendant payable at the end of the year. -
At maturity, the notes were not paid. It was on these notes that suit was brought and judgment confessed as before stated.
Plaintiffs obtained a writ of fieri facias in accordance with which the sheriff seized 500 barrels of first, and 200 barrels of second, clarified.
A few days after the seizure had been effected, to wit, on the 23d day of January. 1908, the defendant obtained an order from the court permitting him to furnish a forthcoming bond, under section 3411 of the Revised Statutes, for the return of the sugar seized, in case its return is called for.
The People’s Bank of Plaquemine intervened about the same time, and claimed that originally it had a privilege on the crop, and particularly on the part seized, for the balance due of $16,525.92, with 8 per cent, in terest from January 30, 1907, and 10 per cent, on the amount judicially claimed as fee of attorney.
The act under which the bank claims and on which it bases its intervention recites that the defendant executed a promissory note for the amount before stated, which is identified with, the act drawn to secure the advances, interest, and fees. The act contains the usual clause, “pledge and pawn” of the crop to secure advances.
For convenience, the borrower, Lefebvre, executed notes from time to time for amounts borrowed from the bank, which were annexed to the $25,000 note held by the bank. This was done up to the grinding season. After that time the bank paid on defendant’s check. As defendant realized cash on his crop, he deposited it in bank.
The intervener and third opponent asked for an order from the court directing the sheriff to retain the proceeds of sales in his hands until further order of court.
Intervener also as.ked for recognition of the privilege accorded by law for the balance due, interest, and fee, and for payment of the amount by “priority and privilege over other claims,” quoting from intervener’s prayer.
In answer to this petition, plaintiff pleaded the general issue.
According to-the evidence, the act executed by defendant in favor of the bank was recorded in the “Record of Liens and Privileges” and Pledges in the parish of Iberville, and it was only recorded in the Book of Mortgages in the parish of West Baton Rouge. It was not recorded in the Book of Liens and Privileges.
The Australia plantation, on which the *247 crop was cultivated, is situated about one half in Iberville and the other half in the parish of West Baton Rouge.
The plaintiff, Lochte & Co., agreed to sell groceries to the defendant early in the year.
The defendant states as a witness that during the year he received goods from the plaintiff to supply his laborers and his tenants, and to that extent lessened the amount of cash that he needed from the People’s Bank to pay cash obligation, particularly his pay roll. That the goods he obtained from plaintiff and the cash from the bank went “hand in hand” into the actual making ot the crop of 1907, and he added that he thought that the People’s Bank, through its president, knew that he received these supplies from plaintiff company.
It is also a fact that 'the defendant received amounts from the bank to pay the expenses of grinding and taking off the crop.
The amount thus received and expended was $10,955.32.
At one time the intervener referred to this sum as an amount of proceeds from the crop placed to the credit of defendant in. bank, and which he later withdrew to pay the expenses of the grinding and saving his crop.
At another time it is referred to as an amount which the bank advanced to defendant to meet the expenses just mentioned.
At one time, while testifying, the president, Dunlap, as a witness,'is quite positive that it was the bank’s money which thej'' loaned to defendant on his own check. He repeated that it was a loan. The evidence on this point is conflicting.
The following is a statement of the conclusion arrived at by our learned Brother of the district court:
First. That the People’s Bank advanced $25,000 to the defendant in accordance with act of privilege, pawn, and pledge, within the intendment of Act No. 66, p. 114, of 1874.
Second. That the plaintiff company advanced to the defendant, under a verbal contract, supplies to make his crop of 1907 to the amount of $5,757.72.
Third. That the sugar seized in this case sold on the open market for $16,666.55, and that the entire crop sold for $30,674.42, out of which amount the bank had received $14,007.87 prior to the seizure.
The court a qua deducted the $14,007.S7 from thé $25,000, the total advance as per the judgment, leaving a balance due the bank of $10,992.13, secured bj privilege first in rank out of the proceeds of sugar seized and sold.
The judgment of the district court fixed the amount at $16,666.55.
The balance of the proceeds was decreed subject to the privilege of Lochte & Co.
Discussion and the Decision.
Several objections were urged during the trial which we will dispose of at this time.
The Act of Pledge and Pawn.
The plaintiff, Lochte & Co., objected to the act executed by defendant in favor of the intervener as not in the authentic form, and that it did not make proof of its contents. It was introduced in evidence as an authentic act and as making full proof of the rights claimed.
It was' regularly offered, and not the least objection was urged against its admissibility. It follows, whether authentic or not, is now of no moment. No objection having been raised, it is now properly before the court as evidence.
The Bond.
During the trial in the district court, .plaintiff objected to the forthcoming bond fur *249 nislaed by the defendant to the sheriff on the ground that it was made payable to the , sheriff; it should have been made payable to the plaintiff.
That question is not properly before us. The issue presented and the argument lead us to the conclusion that plaintiff is secured enough by the bond, and, if it is not, the sheriff himself and others concerned will have to respond for the amount.
But above all, we do not consider that issue as being before us. We, therefore, pass it without further comment.
Judgment is Not Evidence of a Privilege.
The plaintiff company attaches importance to the confession of judgment made by defendant in its favor.
The judgment on which the fi. fa. issued is binding upon all parties here concerned. It cannot be collaterally attacked to the end of setting aside the seizure.
We will not review the decisions upon this point, but are content to leave it, after citing I-Iennen’s Digest, verbo “Judgment,” with the statement that in this instance there is in one respect an exception to the decisions cited, because the opponents and all concerned claim under the judgment; this, however, for reasons we will state in a moment, does not include the privilege sought to be recognized by the terms of the judgment as binding upon the parties.
It is different from the judgment itself decreeing an amount due as to this privilege on the crop claimed oy plaintiff. As to the privilege, the judgment, as relates to the privilege, is res inter alios acta, and it is not binding upon third persons. Claiming the proceeds has the effect of admitting the moneyed part of the judgment, but it does not admit the privilege.
The confession is in effect evidence of the defendant’s willingness to accord a privilege, but no privilege can be created by mere confession. A privilege is a real right which grows out of the nature of the debt. It is not created by the mere agreement or convention of the parties, nor by, confession of judgment of a defendant. Rev. Civ. Code, arts. 3185, 31S6.
But there was a privilege proven by verbal testimony. If there were only the confession, there would be no evidence before us. But the defendant, as a witness for the intervener, we have before noted, has testified that the groceries supplied by the Lochte Company were as useful in operating the plantation as the cash-advanced by the intervener ; that each was used in paying the laborers, including the tenants who worked on shares with the owner, as is sometimes the case with some of the laborers on large plantations.
The defendant testified that the funds advanced by the bank and the groceries of the plaintiffs were used in paying the laborers. The goods as well as the advances “went to the employes.”
Tenants.
Objection is urged by intervener to the privilege for groceries which went to the tenants.
It appears that a small part of the crop was cultivated on the share system with the tenants. The groceries were delivered to the owner, who at the end of the year deducted amounts due by the tenants for provisions and advances.
The amounts obtained from this source and the advances were small.
There must be evenhanded justice in this thing. If plaintiffs are not entitled to recover, neither is the intervener.
The bank is allowed the privilege which it claims; so are the plaintiffs.
It was a plantation store from which the advances were made. The case comes with *251 in the principle laid down in Cain v. Pullen, 34 La. Ann. 518.
It must be borne in mind there is no question of “pledge and pawn” before us; only a privilege.
Before leaving this point, we will illustrate by a practical example. The bank handed, say, $100 to the planter. He turned it over to the tenant, who expended it as he pleased, to make crop or not as he chose. Still the bank has a privilege.
The groeeryman forwards provisions, which are delivered by the planter to the tenant, and go to the latter’s support or that of his family. It must in the nature of things be applied to plantation purposes. Why should the banker have a privilege and the grocer not, particularly as it is testified that the bank was aware “that you had these supplies from the Henry Lochte Company, and particularly, further, in view of the fact that the supplies to laborers and tenants lessened the amount of cash that you needed from the People’s Bank or elsewhere to pay your cash obligations, particularly your pay roll”?
We find four causes why plaintiff has a privilege concurrently with opponent on the crop in West Baton Rouge.
First, the understanding that plaintiffs were selling the groceries applied toward feeding the laborers and tenants.
Second, the advances and the groceries were for the same laborers and tenants on the place.
Third, as relates to security in West Baton Rouge, plaintiffs and opponents are on the same level.
Fourth, the cash and the groceries were paid and delivered through the same agency.
They gave rise to debts for necessary supplies furnished to the plantation. Rev. Civ. Code, art. 3217.
If plaintiffs and opponents have no privilege on the crop in West Baton Rouge, plaintiffs would still have the right to recover under their judgment.
We are of the opinion that under the facts and circumstances of this case each has a privilege on the crop in West Baton Rouge concurrently and pro rata, and we so decree.
Pleading as Relates to Pledge and Pawn of the Crop.
This being a controversy between opponent and plaintiffs about the proceeds of a crop, we take up in the next place the claims of the first — third opponent.
It is contended by plaintiffs that this opponent has waived its “pledge and pawn.” This contention is not sustained.
The petition of the third opponent specially refers to its “pledge and pawn.” It sets forth all rights it has under the written act of pledge. But in the prayer it claims a preference and privilege. There was thereby no abandonment of its pledge and pawn, which it had not failed to allege at length. For reasons hereafter stated, our ruling at this jjolnt applies only to the crop made in Iberville parish.
The body of the petition may be considered in connection with the prayer, and when it is very evident that there was not the least waiver intended, and the prayer with the-petition render it evident that the pleader included all of the rights of the petitioner,, there is no reason to hold him as having abandoned a right.
It would be different if the petition contained no reference to the “pledge and pawn,” and the prayer was silent in regard to a superior right expressly claimed.
The act was duly inscribed in the parish of' Iberville. The intervener has a claim on that part of the plantation situated in the-parish of Iberville — this includes one-half of *253 the place — and by agreement we are informed that one half of tbe crop was made on tbe part of the plantation within the limits of that parish.
The whole crop sold for $12,569.78. Intervener has a right to the whole amount for which that part of the crop made in Iberville sold, and to a share, in proportion to its claim, to the crop in West Baton Rouge. The plaintiffs have a right to a proportionate share of the crop in West Baton Rouge.
Want of Proper Registry.
It follows: A different issue presents itself regarding the crop of defendant in the parish of West Baton Rouge.
The act in this last-named parish was recorded in the Book of Mortgages only. The statute provides that the clerks of the district courts in all the parishes, except the parish of Orleans, “shall keep a separate book in the mortgage office for recording liens and privileges on crops instead of in the Mortgage Book. Act No. 51, p. 43, of 1890.
“Pledges, pawns,” are stricti juris. The law must be complied with.
In this state of the issues, plaintiff and the intervener each has a privilege on the crop on Australia made in West Baton Rouge, without “pawn” or “pledge” to the opponent, and they will divide concurrently, as before stated, the proceeds of the crop made in that parish in the proportion of the interest of each.
Credit under Judgment of District Court.
We are next in the order of issues, as presented and argued, to consider and determine whether the amount collected by the intervener on the judgment appealed from was properly credited in that judgment.
We are not of that opinion. Our reasons are: A change of the imputation of payment as proposed in that judgment would result in applying the fund to the payment of another claim than that to which it has been applied. The application of the fund, as shown on the account of the intervener, has-been made heretofore in accordance with the consent of the debtor, the defendant. The plaintiffs cannot at this time change the payment from one fund, secured as they contend, to another fund not secured.
The amount in question was advanced during the grinding season from funds which defendant had deposited in the intervening bank, being part of the proceeds of the defendant’s crop, pledged and pawned. It was absolutely necessary to let defendant have-this amount to enable him to save his crop.
When . the amount was returned, it was. applied to the satisfaction of intervener’s claim generally, without regard to whether it was the part secured or not secured, according to plaintiffs.
The advances made by the bank were $20,-600.
According to one of the theories of the-case, the advances made by the bank for-the grinding season, from the funds placed to. defendant’s credit, as before stated, were-partly secured by the difference between the-$20,600 and the $25,000.
According to another theory, it was all secured; if not by pledge and pawn, it was. secured by a privilege.
But leaving these grounds regarding imputation of payment out of further consideration, the following is controlling:
The intervener’s petition and its accompanying account credited the amount first above mentioned on this point as before-stated.
Plaintiffs met the petition of opponent by the answer of general denial. There was no-objection urged in the answer to the imputation of payment as made.
*255 The objection to the imputation of payment ■should be urged by plea.
Prom this point of view, the amount of intervener’s claim at the time it was filed was................ $16,525 92
Amount received by intervener from sales of sugar and molasses in New Orleans prior to this suit and 10% fee of attorney........ 3,956 14
$12,569 78
The proceeds of crop in Ibervilleare credited on intervener’s claim 6,355 20
The proceeds of the crop in West Baton Rouge are credited in part to plaintiff, and in part to intervener, in the proportion of amount due each; that is, to plaintiff.. 5.757 72
Plus interest to intervener........ 6,214 58
Plus interest and fee of attorney due on the respective amounts at the date of settlement.
It is ordered, adjudged, and decreed that the judgment appealed from be annulled, ■avoided, and reversed.
It is further ordered, adjudged, and decreed. that the proceeds of the crop made ■on the Australia plantation in West Baton Rouge be applied in the proportions before stated, and as to Iberville as before stated.
It is further ordered, adjudged, and descreed that appellees pay the costs of appeal, and that the costs in the district court be paid from the common fund derived from the sale of the crop made on the plantation in West Baton Rouge.