No. 2588

Second Circuit

---

DODD v. HORAN; BEESON-MOORE
STAVE COMPANY, Intervener

---

(April 5, 1929. Opinion and Decree.)
(May 8, 1929. Rehearing Refused.)
(November 4, 1929. Writ of Certiorari and
Review Granted by Supreme Court.)

---

R. A. Fraser, of Many, attorney for plaintiff, appellee.

Boone & Boone, of Many, attorneys for intervener, appellant.

ODOM, J. J. C. Horan operated a stave mill in Sabine parish and manufactured logs into staves. The plaintiff, Dodd, was employed as bookkeeper at the mill at a salary of $150 per month, from November 1, 1924, to April 1 of the following year. When Horan discharged him, he owed plaintiff a balance on salary of $350. Dodd brought the present suit for that sum, alleging that the amount was due him for services rendered and labor performed at the stave mill, and that he had a lien and privilege on all the stave bolts and staves manufactured in said mill plant during the period of his employment. He caused to be provisionally seized all staves found on the yards at the mill.

The Beeson-Moore Stave Company intervened, claiming ownership of the staves seized, alleging that it had purchased them from Horan prior to the seizure, in good faith and without previous notice that plaintiff claimed any debt against the defendant, Horan, or that plaintiff claimed a privilege on the staves. Intervener especially denied that the plaintiff had a privilege on the staves seized.

There was judgment in the district court for plaintiff against Horan for the amount claimed, and against intervener, recognizing plaintiff's lien and privilege on the staves. Horan did not appeal, and the judgment is final as to him. The case was brought up by intervener, and it asks that the judgment, in so far as it recognizes plaintiff's lien and privilege on the staves, be reversed.

## OPINION

Plaintiff's seizure of the staves must fall, unless it be held that he has a lien and privilege on them to secure the balance due him on salary as a bookkeeper for the mill in which they were manufactured. The staves seized were manufactured during the period of plaintiff's employment.

Counsel for plaintiff concedes that he has no privilege on the staves under the Code, or any general law. But, it is contended that he has a lien and privilege under section 1 of Act 23 of 1912 (page 30), which reads as follows:

"That all managers, mechanics or laborers employed by or working in saw mills, planing mills, shingle mills, sash, door and blind factories, hoop mills, stave and box manufactories, shall have a lien or privilege on all logs, square timbers or lumbers, shingles, sashes, doors, blinds, hoops, staves, boxes and all material manufactured in the saw mills, planing mills, shingle mills, sash, door and blind factories, hoop mills, stave and box factories, where such managers, mechanics and laborers are engaged, or employed, for the payment of their salaries or wages; provided that this lien or privilege shall have no effect against bona fide purchasers of the said material, without previous notice."

The three classes of persons granted a lien and privilege under this act are managers, mechanics, and laborers; no specific mention is made of bookkeepers, clerks, or other employees.

Privileges are stricti juris. They are not created by covenant, and can be allowed only in cases where they are expressly granted by statute or Code. C. C. art. 3185; Lochte vs. Lefebvre, 124 La. 244, 50 So. 26; Citizens' Bank vs. Maureau et al., 37 La. Ann. 857; State vs. Citizens' Bank, 33 La. Ann. 705.

Plaintiff was neither the manager of nor a mechanic in the stave mill. He kept the books, and, in connection with his services as bookkeeper, he at times went to the yards and helped to check and count the staves. Admittedly he performed no other service in connection with the manufacture of the staves. His claim to the privilege is grounded upon the proposition that he was a "laborer" at the mill, so that his right to a lien and privilege hinges upon the question of whether he was a "laborer" within the meaning of that term as used in the statute.

"The words of a law are generally to be understood in their most usual signification, without attending so much to the niceties of grammar rules as to the general and popular use of the words." C. C. art. 14.

The word "laborer," in its broadest sense, includes all those persons who follow any legitimate employment, or perform any service or duty, either public or private. The President of the United States, members of his Cabinet, Governors, judges, attorneys, and editorial writers are all laboring men, in the sense that they do a great deal of work which is frequently attended by muscular and physical exertion. But, when the word "laborer" is mentioned in connection with a class of individuals, no one thinks of including such men in that class. They are not classed as "laborers," in the sense in which that term is usually and generally used and understood. A laborer, in common parlance, is one who works with his hands; one who works at a toilsome occupation, especially a person who does work that requires strength, rather than skill, as distinguished from artisans and from the professional classes. Webster.

We quote the following from 35 C. J. 927, 928, and it will be noted by reference

to this text that the writer has cited in support cases from practically all the states, including our own:

"Popularly speaking, the term, is not applicable to any one who does not earn his living by the work of his hands. When used in its ordinary and usual acceptation, 'laborer' carries with it the idea of actual physical and manual exertion or toil, and excludes anyone whose employment is associated with mental labor and skill; and such is the primary or specific lexical meaning uniformly assigned to the word. In its restricted sense, the term signifies one who performs manual, menial, or physical exertion, labor, or toil, not requiring special accuracy, knowledge, skill or training, for hire or wages, under the direction of his employer, master, or superior, and hence distinguished from an artisan, professional man, or skilled workman; a servant in a husbandry or manufacture, not living infra mœnia; an operative; a workman; one engaged especially in husbandry; one who does physical labor; one who is engaged in some toilsome physical occupation; one who is regularly employed at some hard work; one who labors in a toilsome occupation; one who labors with his hands for wages; one who literally earns his bread by the sweat of his brow; one who performs labor with his own hands; one who performs physical or manual labor; one who performs with his own hands the contract he makes with his employer; one who performs work which requires little skill or special training, as distinguished from a skilled workman; one who subsists by physical toil in distinction from one who subsists by professional skill; one who works at a toilsome occupation; one who works with his hands rather than with his head; especially a person who does work that requires strength rather than skill, as distinguished from artisans and from the professional classes."

In the case of Cole vs. Grant, Sheriff, 144 La. 916, 917, 81 So. 398, 399, the court said:

"A laborer has been held, by various courts, in a restricted sense, to be one who performs manual labor, menial or physical exertion, labor, or toil, not requiring special accuracy, knowledge, skill or training, for hire or wages, under the direction of his employer, master or superior, and hence distinguished from an artisan, professional man, or skilled workman; one who is engaged in or labors in some toilsome physical occupation; one who is regularly employed at some hard work; one who performs with his hands the contract he makes with his employer; one who subsists by physical toil in distinction from one who subsists by professional skill; one who works with his hands rather than with his head; a workman."

The word "laborers," in the statute under consideration, was used by the lawmaker in its ordinary sense, and must be construed to refer to and include only those who are ordinarily and usually classed as laborers.

As that word is generally used and understood, it does not include bookkeepers. A bookkeeper, it is true, does some work with his hands; so does a Supreme Judge. But his main work is mental, not physical. His work involves principally mental skill, the exercise of intellectual faculties and business capacity. His success depends upon mental skill, rather than upon physical exertion. In the "modus operandi" of keeping books, he is not directed or controlled by his employer. A bookkeeper's contribution to industry is a mind trained to think—to calculate; whereas a laborer, as we understand and apply that term, contributes a strong arm and a stout back.

In construing laws granting privileges to laborers, courts have uniformly drawn a distinction between those who exercise mental skill and judgment, on the one hand, and those who labor with their hands, on the other. That distinction was very clearly drawn by the Michigan Supreme Court in the case of Michigan Trust Co. vs. Grand Rapids Democrat, 113 Mich. 615,

71 N. W. 1102, 67 Am. St. Rep. 486, in which the court held that employees of a newspaper whose business it was to write editorials, prepare copy for the printers, direct the make-up of the paper, read proof, gather news, and report, could not claim the benefit of a statute which provides that all debts which shall be owing for labor by a corporation at the time it shall become insolvent shall be preferred claims against the estate of such insolvent debtor, but that work performed by a mailing clerk, whose duty it is to get out, address, and otherwise deliver papers to the patrons, being mechanical and manual, is embraced within the terms of the statute.

Likewise it was held in Guise vs. Oliver, 51 Ark. 356, 11 S. W. 515, that the term "laborer," as used in an act providing that laborers who perform work and labor for any person under a written or verbal contract, shall have an absolute lien on the product of their labor for such work and labor, should be construed according to its common acceptation and to mean men who do work that requires little skill, as distinguished from an artisan, and is not to be construed liberally as giving to every laborer a lien for his labor.

Our investigation of the authorities discloses that it has been generally held that a bookkeeper is not included in the term "laborer," as used in statutes granting liens to laborers or exempting their wages from seizure, as under article 644 of our Code of Practice; but there are some cases to the contrary.

In the case of State ex rel. I. X. L. Grocery Co. vs. Land, Judge, 108 La. 512, 32 So. 433, 58 L. R. A. 407, 92 Am. St. Rep. 392, it was held, to quote the syllabus:

"Mechanical engineers, electrical engineers, clerks, agents, cashiers of banks, bookkeepers, and all that class of employees whose employment is associated with mental labor and skill, are not considered as laborers."

In Malcomson vs. Wappoo Mills (C. C.) 86 Fed. 192, it was specifically held that a bookkeeper of a mining company is not a laborer under "an act to provide for laborers' liens."

In Signor vs. Webb, 44 Ill. App. 338, it was held that a bookkeeper is neither a laborer nor a servant in view of an act to protect employees and laborers in their claims for wages.

In Milligan vs. San Antonio & G. S. R. Co. (Tex. Civ. Ap.) 46 S.W. 918, it was held that the term "laborer," as used in a statute providing that all mechanics, laborers and operatives who have performed labor in the construction or operation of a railroad shall have a lien thereon, apparently includes only those who have performed manual labor; and a bookkeeper and auditor in the employ of a construction company which builds a railroad is not entitled to a lien for the amount due him for his services.

In Cochran vs. A. S. Baker Co., 30 Misc. Rep. 48, 61 N. Y. S. 724, it was held that a bookkeeper is not a laborer, within the law preferring the wages of laborers of insolvent corporations.

It has been held that a railway clerk, whose services consisted mainly of work requiring mental skill or business capacity, and involving the exercise of his intellectual facilities, is not a laborer within the statute relating to the exemption from garnishment of laborers' wages. See Boynton vs. Pelham, 108 Ga. 794, 33 S. E. 876; Hunter vs. Morgan, 108 Ga. 409, 33 S. E. 986; Oliver vs. Macon Hardware Co., 98

Ga. 249, 25 S. E. 403, 58 Am. St. Rep. 300.

Counsel for plaintiff cites the case of Swain vs. Kirkpatrick Lumber Co., 143 La. 30, 78 So. 140, 20 A. L. R. 665, in support of his claim for privilege. The defendant in that case was a manufacturer of lumber, and plaintiff's claim for a privilege was recognized by the court under Act 23 of 1912, p. 30, but he was a saw filer and the foreman of the mill. As a saw filer, he was a laborer, and, under the express wording of the statute, he was entitled to a lien as foreman.

Our conclusion is, and we hold, that a bookkeeper is not a laborer under Act 23 of 1912, and therefore plaintiff has no privilege.

For the reasons assigned, the judgment appealed from, recognizing a lien and privilege on the staves seized, in favor of plaintiff, is reversed, and further ordered that the provisional seizure thereof be set aside and the staves released; all costs incurred on account of the main demand to be paid by Horan, the defendant; and all costs incident to the intervention and appeal to be paid by plaintiff, Dodd.

## ON APPLICATION FOR REHEARING

PER CURIAM. Counsel for appellee on application for rehearing says in brief:
"In applying for a rehearing, we do not complain of the learned and exhaustive opinion of the Court to the effect that a 'bookkeeper' is not a 'laborer' under the Act of 1912, but we do most earnestly submit, that the Court was in error in passing on that question at all, or in holding that that question could be decisive of the issues in this case."

He now urges the point that this court had no right to pass upon the question whether a bookkeeper is a laborer and entitled to a lien and privilege on the staves manufactured, because that is a question which concerns only the plaintiff-appellee, and the defendant, Horan, who did not appeal, and hence that question is foreclosed by the judgment of the lower court.

The point raised on application for rehearing was not raised on the original hearing in this court, and we can not consider it now.

"It is settled practice of the Court not to notice in application for re-hearing points which were not made in the argument of the cause." Succession of Broom, 14 La. Ann. 67; Nugent & Co. vs. Buisson, 35 La. Ann. 112; Baldwin vs. Sheriff et al., 47 La. Ann. 1470, and authorities cited; Petitpoin vs. Thereze Palmer and Her Husband, 1 Rob. 221.

Not only that, the very point which counsel says the court had no right to pass upon is the one which counsel on both sides particularly stressed in argument and in brief on the original hearing. It is the recollection of every member of this court that the question whether a bookkeeper is a laborer and has a privilege on the products of a stave mill, under section 1, Act 23 of 1912, was the only point stressed in argument by either counsel.

Counsel who now says the court had no right to pass on that point, submitted a brief on the original hearing, the syllabus of which is in one paragraph and reads as follows:

"All managers, mechanics or laborers employed by or working in sawmills * * * stave and box factories, shall have a lien and privilege on all * * * staves, boxes and all materials manufactured, * * * for the payment of their salaries or wages; provided that this lien or privilege shall have no effect against bona fide purchasers

of said materials without previous notice." Section 1, Act 23 of 1912; Swain vs. Kirkpatric Lbr. Co., 143 La. 30.

The act (23 of 1912) gives to all managers, mechanics and laborers employed to do work at stave mills a lien and privilege on staves manufactured at the mill, "provided that this lien or privilege shall have no effect against bona fide purchasers of said materials without previous notice."

The two propositions which counsel stressed in his original brief were: First, that plaintiff, a bookkeeper, was a "laborer" and entitled to the privilege; and second, that intervener was not a purchaser of the staves in good faith and without notice of the lien in favor of plaintiff, and that, therefore, the staves passed from Horan, the defendant, to intervener burdened with the privilege. So that counsel for appellee came into court and earnestly and ably stressed the point that his client had a privilege on the staves for the reason, as we understand it, that if he had no such privilege, he could have no possible interest in the alleged sale from Horan to intervener. We decided that he had no privilege, and counsel now says the holding is correct. Then what further interest has plaintiff in the case? The lower court rejected intervener's demands, holding, as we understand, that Horan is still the owner of the staves. We left the decision on that point undisturbed. Plaintiff, we think, has gotten all to which he is entitled. He seized the staves, not under attachment or fi. fa., but under an asserted lien and privilege. If he has no privilege, he cannot hold the staves and we dissolved the seizure.