The opinion of the court was delivered by
Fenner, J.
J. K. Skipwith had been the lessee of Ashland plantation, belonging to R. F. Learned, during the year 1890, and Flower & King had furnished him supplies and advances for the cultivation of same during that year.
In September, 1890, an agreement was entered into between Learned and Skipwith, by which the former agreed to sell to the *896 latter the plantation with all buildings, improvements, mules, implements, crop and movables, and all claims against hands or tenants, for the price of $20,000, of which $2500 was to have been paid in cash on December 1, 1890; $2500 in cash on January 1, 1890, and the balance in eight promissory notes maturing annually. It was agreed that Skipwith was to go into immediate possession, but that title was not to pass until payment of the $5000 cash as stipulated.
Skipwith paid $2000 on account of said cash payments, and it was agreed between them that the balance should be deferred until the fall of 1891. Under this agreement and extension Skipwith was in possession and control of the property, when in . January, 1891, he applied to Flower & King for advances for its cultivation during 1891. He represented to them his purchase on long time, and his partial payment of the price, and obtained their consent to advance him $3000 to make his crop, obligating himself to ship them all cotton raised or controlled by him, guaranteed at 300 bales, and subjecting the crop to their privilege as furnishers of advances and supplies.
Plaintiffs advanced the $3000 as agreed, and on May 19 they wrote to him the following letter:

“ J. K. Skipwith, Esq.:

“ Dear Sir — Enclosed we hand you the itemized statement of account, showing a balance to your debit of $3356. Please examine and report upon at your leisure. You see the account is overdrawn three hundred and odd dollars. This year promises to be a very close one, and we must adhere closely to the contracts as made. We have taken every dollar’s worth of-business that our means will stand, and to extend contracts will take it beyond the limit of our ability, and we have already been compelled to decline a large amount of new business and applications to extend contracts as closed. “ Yours truly,
“Flower & King.”
With tbelletter they enclosed an itemized statement of his account. They received no reply; but after the date to which the account was made up, they received several drafts from defendant which were duly paid.
So matters stood until about the beginning of the shipping season, when Skipwith called on plaintiffs and made some complaint of *897 errors in the account, and then stated that he had a fine crop which would more than pay all his liabilities. The latter statement was repeated at another interview, with the additional statement that cotton was low and there was no hurry about shipping.
On November 3, receiving no cotton, plaintiffs wrote him as follows:
“ We have not had a letter from you for some time and no shipments. This is the season of the year when our 'load bears most heavily upon us,, and we expect relief from those whom we have aided during the year.”
They still received no reply and no cotton, and subsequently ascertaining that Skipwith was shipping the Ashland cotton to various other merchants in this city, they instituted this suit against him, accompanied by writs of sequestration and attachment, seizing under the sequestration cotton, cotton seed, corn and other products, and, under the attachment, the same and other property.
They, thereafter, learned for the first time that Skipwith and Learned had entered into the following transactions: On May 21, 1891, Skipwith sold to Learned all his mules on Ashland plantation for the price of $1250, which was retained by Learned on account of cash payment on plantation. On the next day, May 22, Learned leased to Skipwith the plantation, mules, etc., for $3000, payable on November 1, with the following stipulation:
“ The said Skipwith being desirous of purchasing the Ashland plan-' tation, and having entered into a written agreement with the said Learned, in which the latter has obligated himself to make title to •said Skipwith on certain conditions. Now should the said Skipwith pay to the said Learned the amounts agreed to be paid in said contract (to sell) and comply fully and faithfully with the terms thereof, and with a certain supplemental contract relative to the extension of the terms of payment made in the original contract, etc., then this obligation to be null and void, otherwise to -remain in full force and effect.”
On the 1st of June Learned entered into a contract by which he agreed to advance Skipwith $2000 for the cultivation of his crop and , took from him a formal pledge’ of said crop under Act 66 of 1874, which was duly recorded.
On October 3, 1891, Learned took another similar pledge from Skipwith for a further sum of $4000, which was also recorded.
*898 On December 3, 1891, R. F. Learned, represented by same counsel who represented defendant, filed a petition of intervention, setting forth that he leased the Ashland plantation to defendant, May 22, 1891, for $3000; that in June and October, 1891, defendant pledged to him his crop; that he advanced $3700 under said contracts of pledge, and he claimed a privilege as lessor and as pledgee and furnisher of supplies, superior to all persons.
On December 9 the defendant, Skipwith, filed a motion to dissolve the attachment and sequestration on thé ground that the affidavit on which they were issued was untrue. This motion was heard and overruled by the judge.
On January 19, 1892, plaintiffs took out alias writs of attachment and sequestration, under which they seized the same property before seized, and also the mules and other property.
By an amended petition of intervention Learned avers the sequestration and attachment of mules, wagons, etc., and his ownership thereof, but says that if not his property he has a lessor’s privilege thereon.
The defendant moved to dissolve the alias writs of sequestration and attachment on the ground that the affidavit was untrue.
Plaintiffs answered Learned’s intervention, averring that the sale of stock and the lease were simulated and fraudulent, and that their privilege for advances primed and outranked the pledges of Learned on the crop.
After hearing the court rendered judgment maintaining the motion to dissolve the writs of attachment and sequestration, sustaining the intervention of Learned for lease and supplies, giving plaintiffs an ordinary judgment for the debt against defendant and sustaining the demand of plaintiffs to have the expenses of gathering and shipping the crop seized as costs, from which judgment plaintiffs have appealed to this court.
We think the judgment was clearly erroneous in dissolving the writs of sequestration and attachment. The acts of defendant, as heretofore detailed, fully justified their issuance. Defendant had disposed and was disposing of his crops and property with the plain purpose of defeating plaintiffs’ privilege and debt. As against him the writs should have been sustained.
We consider it equally clear that there was errror in denying *899 plaintiffs’ privilege on the portion of the crop seized under their sequestration.
Plaintiffs’ privilege was antecedent both to the pledges of intervenor and to the lease, and was entitled to preference over both, so far as the crop is concerned. Their privilege is granted by the express terms of Art. 3217 of the Civil Code.
Art. 177, Constitution 1879, provides that “ privileges on movable property shall exist without registration of the same, except in such eases as the General Assembly may prescribe by law after the adoption of this Constitution.”
No action on this subject has been taken by the Legislature; therefore this privilege is perfect as to all the world without registry.
The Act 66 of 1874 authorizes the pledge of crops for advances and supplies, which take effect when recorded; but it does not repeal Art. 3217, C. C., nor does it require the record of such privilege as an essential to its validity. On the contrary, it expressly declares that the pledge is granted “in addtion to the privilege now conferred by law.”
Great stress is laid on Act 89 of 1886, which provides that “ privileges and pledges granted by existing laws of this State shall be ranked in the following order of preference: (1) Privilege of laborer; (2) Privilege of lessor; (3) Privilege of the overseer; (4) Pledges under Sec. 1 of Act 66 of 1874, in order of recordation; (5) Privileges of furnishers of supplies and of money and of the physician.”
It is claimed that, under this statute, a pledge of the crop, no matter when made, divests the rank of all antecedent privileges. We can not approve such a construction. Courts do not readily give retrospective operation to a statute. We think the act only refers to the future and gives a preference to the pledge over any privilege subsequently acquired. If Flower & King had continued to advance after recordation of the pledge, such advances might be subordinated to it in rank, even if made before the advances under the pledge had been actually made, and all privileges for supplies and advances subsequently acquired would share the same fate, even though but for the recordation of the pledge they might have been superior in rank. But to say that a privilege legally existent and valid as to all the world could be destroyed or impaired by a subsequent pledge shocks all sense of justice and would open a door for *900 fraud under which every merchant, after advancing to the near completion of the crop, might find his privilege destroyed by the recordation, at the last moment, of a pledge to some third person for future supplies. Obviously, the crop passed under Learned’s pledge, subject to the pre-existent privilege of plaintiffs, which was not displaced or affected thereby.
It is claimed, however, that, in this case, Learned should have a preference, because the crop on which the advances of plaintiffs had been expended had been destroyed by overflow; that they had refused to make further advances, and that, but for Learned’s advances, there would have been no crop. This position can not be sustained for several reasons. In the first place, the advances of plaintiffs had not been expended merely in planting the destroyed crop. They had been used in organizing the place for cultivation during the year, in employing and feeding laborers and in like necessary measures which must be taken in the beginning of the year and without which no crop could be made. Moreover, Learned himself testifies that, at the date of his pledge, the crop had been planted and was then on the ground. Finally, it does not appear that plaintiffs had, or would have, refused to make further necessary advances. It is true they wrote the letter of May 19, but their subsequent payment of further drafts shows that it was a mere letter of warning, and everything indicates .that if Skipwith had made a proper showing of his situation they would not have refused him further necessary assistance. Skipwith’s conduct toward them was, to say the least, uncandid and deceptive. Instead of first giving them the chance to protect themselves, he hastens to deal with a third person and to take all possible steps to defeat their just rights. Nor can we exculpate Learned from complicity. He knew that plaintiffs had been advancing to Skipwith and if he chose to act without informing himself as to the fact, it was his fault and he should bear the consequences. He has already received and appropriated a large part of the crop and he can not contest the priority of plaintiffs on the portion seized. We think the same reasoning applies to his claim for a lessor’s privilege, so far as the crop is concerned. At the time when plaintiffs’ advances were made Skipwith held the place under an agreement of sale and with the full consent of Learned and with his authority to use it and raise at crop thereon without any lease or contract for the payment of rent. Learned could not thereafter im *901 pair the privilege acquired by plaintiffs by altering his arrangements, making a lease and thus subjecting the crop to an ex post facto lessor’s privilege. The latter privilege only came into being with the execution of the lease and took effect on the crop only as it then stood subject to the valid antecedent privilege of plaintiffs.
We think, however, that plaintiffs’ right to arraign,the transactions between Learned and Skipwith is limited to the extent necessary to the protection of their privilege on the crop. Considering the relations between them in regard to the plantation there was nothing wrong in Learned’s taking the mules as a partial payment or in his making the lease, which does not seem to us to be unjust or unreasonable.
It was fair that, in case the conditional sale was not carried out, Learned should receive a rent for the use of his property, and ordinary creditors have no right to complain thereof.
Plaintiffs are, therefore, entitled to a superior privilege on the cotton, cotton seed and other crops sequestered and attached, and to a privilege as attaching creditors on the balance of the property seized, subordinate however to the lessor’s privilege of Learned, which is to be first paid out of the latter property.
We may add, to avoid misapprehension, that plaintiffs’ take nothing by their so-called seizure of the interest in Ashland plantation and of store accounts. Defendant has no interest in the plantation subject to such seizure, and will have none unless the conditional sale shall be carried out. If not carried out, whatever claim he may have against Learned will be of a personal character and, like the store accounts, is an incorporeal right, which can not be seized in the manner here pursued.
We have considered all the other points made by counsel on all sides, but find nothing in them affecting our conclusions.
It is therefore adjudged and decreed that the judgment appealed from be and is hereby amended so as to maintain the writs of sequestration and attachment against the defendant, and further, so as to recognize their privilege on the crops sequestered and attached, with preference over R. E. Learned, intervenor; and with recognition of their privilege as attaching creditors on the other property seized, herein subordinate however to the lessor’s privilege thereon of Learned, intervenor; and that, as thus amended, and in other respects, the judgment be affirmed, appellees to pay cost of appeal.