## REGIONAL AGRICULTURAL CREDIT CORPORATION v. ELSTON, PRINCE & McDADE.

### No. 5530.

Court of Appeal of Louisiana. Second Circuit.

Jan. 3, 1938.

On Rehearing June 30, 1938.

Further Rehearing Denied July 15, 1938.
Writ of Certiorari and Review Denied
Aug. 5, 1938.

J. G. Palmer, of Shreveport, for appellant.

Barksdale, Bullock, Warren, Clark & Van Hook and Byron Bullock, all of Shreveport, for appellee.

DREW, Judge.

Plaintiff instituted this suit to recover from defendant the sum of $571.29, with five per cent interest per annum thereon from October 23, 1933, until paid. For a cause of action it alleged:

"II. That J. G. Scaife, a resident of Bossier Parish, Louisiana, on the 23rd day of February, 1933, executed a crop pledge and chattel mortgage in favor of petitioner, a copy of which, marked Exhibit 'A' for identification, is attached to and made a part of this petition, covering crops to be grown by the said J. G. Scaife during the year 1933 on the following described property situated in Bossier Parish, to-wit:

"NE¼ of SE¼; N½ of SE¼, Section 30; SW¼ of Section 29; all of Section 32; SE¼ of SW¼, Section 33, all in Township 16 North, Range 12 West, less 103 acres in Section 32 and less 14 acres in Section 33, said Township and Range, acquired by J. W. Prince as per map in Vol. 35, page 445, of the records of Bossier Parish, Louisiana, and also less the right of way of State Highway No. 71, said property being commonly known as the Prince Place and containing 773.81 acres, Bossier Parish, Louisiana;.

"III. That said crop pledge and chattel mortgage were duly filed in the office of the Clerk of Bossier Parish, Louisiana, on the 27th day of February, 1933, and recorded in Privilege and Lien Volume 7, at page 551, and Chattel Mortgage Volume 5, at page 11, of the records of said Parish.

"IV. That said crop pledge and chattel mortgage were executed to secure advances amounting to $2750.00, bearing interest at the rate of 6½% per annum, until paid, on $750.00 from February 23, 1933, on $700.00 from April 1, 1933, on $500.00 from May 1, 1933, on $300.00 from June 1, 1933, on $200.00 from July 1, 1933, on $200.00 from August 1, 1933, and on $100.-00 from September 1, 1933, together with 10% on said principal and interest as attorney's fees.

"V. That no part of said advances has been repaid and there is now due petitioner the sum of $2750.00, with interest and attorney's fees as hereinabove alleged.

"VI. That petitioner on or about the 13th day of September, 1933, entered into an agreement with defendant, evidenced by letters, copies of which, marked Exhibit 'B' and Exhibit 'C', for identification, are attached to and made a part of this petition, whereby defendant agreed to have the cotton crop covered by petitioner's pledge harvested and ginned and to hold the same.

"VII. That after said cotton crop was harvested and ginned, defendant, in disregard of petitioner's rights thereto, disposed of the same on or about the 23rd day of October, 1933, realizing therefor the sum of $571.29, after deducting expenses of harvesting and ginning.

"VIII. That petitioner promptly asserted its rights to the proceeds of the sale of said cotton, but defendant retained the same and refuses to account to petitioner therefor."

It attached to the petition a certified copy of the crop pledge and chattel mortgage; and also the following two letters:

"Shreveport, Louisiana.
"September 13th, 1934.
"Elston, Prince & McDade,
"Shreveport, Louisiana.
"Gentlemen:
"Reference J. G. Scaife.

"I confirm agreement with Mr. J. W. Elston on September 12th, as follows:

"You will go ahead with the picking of this crop, employing a foreman at $2.00 per day, and paying for the picking fifty cents per cwt. When the cotton is picked you will haul it to the McDade Gin Company, McDade, Louisiana, for ginning; the cost of hauling is estimated at seventy-five cents per bale.

"The cotton is not to be disposed of except upon instructions from the Regional Agricultural Credit Corporation of Jackson, Mississippi.

"I am sending a copy of this letter to Jackson and as the cotton cannot be ginned before Wednesday, September 20th, you will have some direct definite advice from Jackson before that time.

"Please confirm this agreement direct with Jackson, and oblige,
"Yours very truly,
"R. N. Campbell."
"Shreveport, Louisiana.
"September 13th, 1933.
"Regional Agricultural Credit Corp.,
"Jackson, Mississippi.
"Reference to J. G. Scaife.
"Dear Sirs:

"We wish to confirm an agreement entered into with Mr. R. N. Campbell, as follows:

"We will employ a foreman to supervise picking of the cotton at $2.00 per day and will instruct him not to pay but fifty cents per hundred for picking the cotton.

"We will arrange for the hauling of the cotton to the gin at a cost of seventy-five cents per bale.

"We have already furnished sacks and sheets to be used in picking the cotton at a cost of $35.55.

"After the cotton is ginned, we will hold it pending a possible agreement with you as the disposition of the proceeds after it is sold.

"Yours very truly,
"Elston, Prince & McDade, Inc.,
"by (signed) J. W. Elston,
"President."

Defendant filed an exception of no cause or right of action, which was argued and submitted on briefs to be filed. Before a decision thereon, plaintiff filed a supplemental and amended petition in which it alleged:

"I. That petitioner's pledge was superior in rank to all other pledges and privileges affecting the crops grown by J. G. Scaife in the year 1933 on the land described in Article II of the original petition.

"II. That on or about September 12, 1933, petitioner learned that defendant claimed a privilege on the cotton crop growing thereon and that defendant was making arrangements to harvest and gin the same, whereupon petitioner informed defendant that it had a first pledge affecting said crop.

"III. That J. G. Scaife was without funds with which to defray the expenses of harvesting and ginning and said crop was being neglected.

"IV. That petitioner, in reliance on defendant's promise to hold said cotton after it had been ginned, pending an adjustment of their respective claims thereon, allowed defendant to proceed with the harvesting and ginning thereof on the terms heretofore alleged.

"V. That defendant failed to respect its agreement in that, after said cotton had been ginned, it did not seek an adjustment of the claims affecting the same, but wrongfully and illegally sold it without notice to petitioner and without giving petitioner an opportunity to enforce its pledge thereon.

"VI. That said cotton was worth the sum of $571.29, after deducting expenses of harvesting and ginning, which sum defendant received on the wrongful disposition thereof."

After filing the supplemental petition, the exception was overruled and defendant answered denying the principal allegations of plaintiff's petition. However, it admitted that it harvested the crop grown by John G. Scaife and sold same, realizing therefrom the sum of $571.29, after deducting the expense of harvesting and ginning, and applied same to its own indebtedness against the said Scaife.

Further answering, it alleged:

"(a) That during the year 1933, it sold, furnished and delivered to the said John G. Scaife, groceries or supplies, used by the said Scaife in cultivating the lands and producing the crops thereon described in paragraph 2 of plaintiff's original petition, amounting far in excess of the sum which plaintiff is seeking to recover in this case, and without which said groceries or supplies, the said Scaife would have been unable to cultivate and produce the said crops.

"(b) Defendant further shows that after crediting the said Scaife with all amounts, he paid defendant on his said supply account for the year 1933, he still owed respondent a sum in excess of $571.29 at the time defendant sold said cotton.

"(c) Your respondent now shows that it had a special pledge, lien and privilege, as a furnisher of supplies, superior to any that is claimed by plaintiff herein, on the entire crop grown by the said Scaife upon the said land, including the said cotton, the proceeds of the sale of which plaintiff herein is seeking to recover, and that it had a perfect right to sell the said cotton and to apply the proceeds thereof toward the liquidation of its said account of the said John G. Scaife, without any interference on the part of plaintiff herein, or without having to do so subject to any claims of plaintiff thereto.

"(d) Further answering, and purely in the alternative, defendant shows that if it should be determined that plaintiff held a crop lien against the said cotton, that such crop lien is inferior to the said lien herein claimed and asserted by defendant on said cotton. In this connection and still in the alternative, defendant further shows that plaintiff holds a chattel mortgage executed by the said John G. Scaife unto and in its favor to secure any advances the said Scaife might secure from plaintiff and which covers a large number of mules and wagons, an automobile truck, together with other chattels, which said chattel mortgage plaintiff has failed and refused to foreclose and that until it has foreclosed on the same and caused to be

sold the chattels therein mortgaged, and the proceeds realized therefrom applied on plaintiff's indebtedness and to then determine if there is any balance due it by the said Scaife, it has no right to claim any interest in the proceeds of said cotton, or to complain at any action taken by defendant in the sale of said cotton and in the application of the proceeds thereof to a liquidation of defendant's said debt against the said Scaife, and therefore, plaintiff is estopped to question defendant's right to the said proceeds of sale of said cotton until such proceedings have been followed, which plea of estoppel defendant now specially pleads in bar of recovery.

"(e) Further answering and still in the alternative, defendant shows that the latter part of July, 1933, an unprecedented rain fell, overflowing the planatation described in plaintiff's original petition in paragraph 2, almost in its entirety and completely destroying about six hundred acres of cotton, leaving a very small area that did not overflow and from which was gathered the cotton herein referred to, and that following the said overflow, notwithstanding plaintiff was obligated to furnish the said John G. Scaife funds with which to purchase supplies, amounting to $3050.00, yet it declined to furnish the said full amount and refused to furnish any amounts after the said rains, making it necessary for the said John G. Scaife to depend upon supplies he was able to obtain from defendant, and to thereafter, in any manner, carry on, and that, therefore, plaintiff is estopped to dispute defendant's rights to the proceeds of the sale of said cotton in settlement of its said debt against the said Scaife.

"(f) Further answering and still in the alternative, defendant shows that after the said overflow, and the cotton in question opened and was ready to harvest, and suffering because it was not harvested, the said Scaife urged plaintiff to advance him sufficient funds with which to harvest and gin the said cotton, but that plaintiff declined and refused to make any advances for said purposes, or otherwise, but instead abandoned the said cotton before defendant took charge of it and gathered it, and therefore, plaintiff is estopped to now make any claim to the proceeds realized from the sale of said cotton.

"(g) Further answering and still in the alternative, defendant avers that if it should be determined that the letters attached to plaintiff's original petition, as exhibits 'B' and 'C', are, on their face, an agreement between plaintiff and defendant regulating the manner of handling the proceeds from the sale of said cotton, then and in that event, defendant avers that such letters were signed by J. W. Elston without any authority from the Board of Directors to so act and is not binding upon defendant."

The case was tried on the following statements of fact, the first filed by plaintiff and the second by defendant. They are as follows:

"Subject to the right of defendant, at the time the testimony is offered in court, to urge any objection thereto it could offer if the facts therein involved were sought to be proved by witnesses on the stand, or were sought to be proved by any other method or procedure, the following facts are admitted as evidence in behalf of the plaintiff:

"1. The facts alleged in Articles II, III, and IV of plaintiff's original petition and in Article II of plaintiff's amended petition.

"2. The annexed documents marked 'P–1', 'P–2,' 'P–3', 'P–4', and 'P–5', respectively, constitute the correspondence between plaintiff and defendant relative to the subject matter of this suit.

"3. Defendant, on the 23rd day of October, 1933, after picking and ginning the cotton, produced by J. G. Scaife, disposed of said cotton, realizing therefor the sum of $571.29, after deducting expenses of picking and ginning.

"4. Said cotton was worth the sum of $571.29.

"5. Defendant disposed of said cotton without first having notified plaintiff of its intention so to do.

"6. Plaintiff, upon being advised that the defendant had disposed of said cotton, promptly notified defendant that it claimed the full amount of the net proceeds of the sale of said cotton by preference over all others under and by virtue of its said crop lien and chattel mortgage.

"7. The said J. G. Scaife is still indebted unto plaintiff on the said crop pledge and chattel mortgage in a sum greatly in excess of the said amount of $571.29.

"8. On September 13, 1933, and other material dates, J. W. Elston was president

of Elston, Prince & McDade, Inc., Harrington Hilzim was executive vice president and manager of Regional Agricultural Credit Corporation, and James M. McLemore and R. N. Campbell were inspectors and field representatives of Regional Agricultural Credit Corporation."

"Subject to the right of plaintiff, at the time the testimony is offered in evidence, to urge any objection thereto it could offer if the facts therein involved were sought to be proved by witnesses on the stand, or were sought to be proved by any other method or procedure, the following facts are admitted as evidence in behalf of the defendant:

"1. That during the year 1933 J. G. Scaife had a charge account with the defendant and purchased from the defendant all the supplies used by the said Scaife and his tenants and employees in cultivating the land, and in producing the crops thereon, described in Paragraph II of plaintiff's petition, amounting to a sum not less than $3600.00, and which supplies were necessary for the said Scaife to use in producing the said crop.

"2. That after the defendant credited the said Scaife with all amounts, he, the said J. G. Scaife, paid defendant on his said supply account for the year 1933, he still owed defendant a sum in excess of $571.29 at the time defendant sold the cotton in controversy in this suit and that the said sum thus realized from the sale of said cotton made by the defendant, was credited by the defendant on the said account of the said Scaife.

"3. That plaintiff has never filed any suit against the said J. G. Scaife for any recovery on the advances of funds it alleges it made him during the year 1933, and, consequently has never filed any foreclosure proceeding on its chattel mortgage upon certain movable property owned by the said Scaife, and mortgaged by the said Scaife to plaintiff on or about the 23d of February, 1933, set forth in detail in a copy of said chattel mortgage marked exhibit 'A' for identification and attached to and made a part of plaintiff's petition in this case.

"4. That on or about the 22d day of July, 1933, an unprecedented rain fell, overflowing, almost in its entirety, the plantation described in plaintiff's original petition, Paragraph II, and thereby completely destroying all of the crops then being grown thereon, except a small area which did not overflow, and from which was gathered the cotton involved in this suit.

"5. That the original agreement between J. G. Scaife and plaintiff was for a loan of $2750.00, but later plaintiff, on the application of the said J. G. Scaife, amended its agreement and consented to advance the said Scaife, for use in producing the said crops, an additional $400.00, or a gross loan of $3150.00, but after the said overflow plaintiff declined to advance the said Scaife any further funds, falling short of its said amended agreement in making said loans the sum of two hundred dollars.

"6. That following the said overflow J. C. Scaife offered to turn over to plaintiff his mules, as well as the other chattels covered by his mortgage, together with whatever cotton there was in the field, including the cotton involved in this suit, for plaintiff to handle in whatever way it might wish or desire, and in that connection the said Scaife offered to render plaintiff any assistance he could in the premises, but plaintiff declined to accept the said offer of Scaife; that all of the said cotton had opened and was fastly becoming deteriorated; that at this time, to-wit: on or about September 12, 1933, defendant, of its own volition, began the gathering of the cotton involved in this suit, claiming his right to do so as a furnisher of supplies to the said Scaife, upon the failure of the said Scaife or plaintiff, or anyone else, to proceed with the gathering of said cotton.

"7. That defendant gathered the said cotton and ginned it within a few days following September 12, 1933, and held it until about October 23, 1933, at which time it sold the said cotton and applied the net proceeds realized from said sale to the credit of the said Scaife on his said supply account.

"8. That before selling the said cotton defendant discussed with plaintiff, through its duly and legally authorized representative, the question of the disposition of the funds to be realized from the sale of said cotton and they, plaintiff and defendant, were unable to agree as to the disposition of said funds, and that it was not until after that disagreement that defendant made the said sale of said cotton."

The lower court rendered judgment for plaintiff as prayed for and defendant prosecutes this appeal.

The exception of no cause or right of action is not seriously urged here.

However, we are of the opinion that the amended and supplemental petition cures any and all defects in the original petition, and the two taken together do set forth a right and cause of action.

This case was originally decided below on March 15, 1937. On the next day, defendant applied for a rehearing, alleging that the case had been decided by the court without hearing defendant, whose brief had not at that time reached the court. A rehearing was granted on April 5, 1937, and on April 19th following, the case was argued and submitted on briefs to be filed by April 21st. On April 28th, plaintiff filed a motion to reopen the case in order that it might supplement the stipulated facts on which the case was submitted by offering proof of the superiority of plaintiff's recorded crop pledge over any lien held by defendant. It attached to its motion a certificate of the Clerk and Ex-officio Recorder of Bossier Parish, Louisiana, showing that the only recorded lien or pledge executed by J. G. Scaife for the year 1933, affecting the crop of that year, was in favor of the plaintiff herein. The motion was taken under advisement by the court and on May 3rd following, the motion to reopen was overruled and the former judgment of the court reinstated. In the motion to reopen, counsel alleged that the failure to include this testimony in the stipulations was through error and inadvertence.

The ruling of the court in not allowing the motion was arbitrary, unless it took the position that it was unnecessary for plaintiff to make this proof, which we assume it did since it awarded plaintiff judgment as prayed for. To allow the motion and admit the evidence would not have caused any delay. The case had not been decided at the time and the evidence offered in the motion, if necessary to a just decision in the case, under defendant's contention, should have been allowed.

We are of the opinion that it was unnecessary for plaintiff to furnish this proof. When it offered its recorded crop lien or pledge, it made out a prima facie case, and unless defendant offered testimony to show a recorded lien in its favor of prior date, plaintiff's lien will necessarily out-rank the unrecorded lien of defendant. Maxwell-Yerger Co. v. Rogan, 125 La. 1, 51 So. 48; American Cotton Oil Company v. Spiller Sugar Company, 161 La. 446, 108 So. 878.

Defendant contends the proof was necessary for the reason that plaintiff admitted that defendant had a lien as furnisher of supplies. That is true, but it did not admit it had a recorded lien.

In Maxwell-Yerger v. Rogan, cited supra, the court quoted Act No. 89 of 1886 as follows, and said (page 52):

" '* * * That all privileges and pledges on crops, granted by existing laws of this state, shall be ranked in the following order of preference, viz.:

" 'First. Privilege of the laborer.

" 'Second. Privilege of the lessor.

" 'Third. Privilege of the overseer.

" 'Fourth. Pledges under section 1, of act No. 66 of 1874, *in order of recordation.* (Italics by the writer).

" 'Fifth. Privilege of furnishers of supplies and of money and of the physician.'

"The language of this, the latest, statute, is plain. The furnisher of supplies is entitled to a privilege under Civ.Code art. 3217. Act of 1874, § 1, provides that, 'in addition to the privilege now conferred by law,' he shall be entitled to a pledge by doing certain things, to wit, by entering into a written contract of pledge and having the contract recorded. If any doubt was created as to the effect of that provision by section 2 of the Act, as amended by the act of 1882, it was resolved by the act of 1886, which, as we see, 'provides that' pledges, under section 1 of Act No. 66 of 1874, 'in the order of recordation' shall rank fourth; that is to say, they shall all rank after the privileges of the laborer, the lessor and the overseer, and before the privileges of the furnisher of supplies, and the physician, and, with reference to each other, 'in the order of recordation.'

"The act in question was somewhat differently interpreted in the case of Flower & King v. Skipwith, 45 La.Ann. 895, 13 So. 152, but the soundness of the conclusion reached in that case was questioned in the case of Southern Grocer Co. v. Adams, 112 La. 60, 36 So. 226, and we now feel constrained to overrule it. The recorded pledge of the furnisher of money and supplies primes all unrecorded and all subsequently recorded privileges of such furnishers. It follows that, as plaintiff is the only furnisher of money and supplies before the court whose pledge is re-

corded, its claim must be given the first rank in that class."

This holding was reaffirmed in American Cotton Oil Company v. Spiller Sugar Company, cited supra. We think it clear that plaintiff's privilege and lien on the crops produced by J. G. Scaife superior in rank to that of defendant against the same crops.

The letters offered in evidence can have little bearing, if any, on a just decision here. They only show the relations existing between plaintiff and defendant in respect to the cotton. A proper decision can only come from a correct ranking of the liens.

 The lien held by plaintiff extends to the proceeds received by defendant from the sale of the cotton subject to the lien, and defendant is personally liable to plaintiff to the amount of the proceeds received from the said sale of cotton; and especially is this true here, due to the relations between the parties and the manner in which the cotton was handled by defendant, as is shown by the letters relating thereto.

We find no error in the judgment of the lower court and it is affirmed, with costs.

## On Rehearing.

HAMITER, Judge.

This rehearing was granted primarily because of the allegations of defendant in its supplemental motion therefor that:

"It now shows that since filing its said motion for a rehearing it has obtained information which it accepts as reliable showing that the claim of plaintiff, appellee, against J. G. Scaife, which necessarily formed the basis of this suit, has been repaid and if so, then under no circumstances should plaintiff be awarded any judgment whatever against defendant, appellant, in this cause."

And further that:

" * * * The facts and circumstances as hereinabove set forth indicate that the claim of plaintiff against the said Scaife has been repaid, in which event their right to contest your appearer's right to the funds involved in this suit have terminated, and if a rehearing is granted herein your appearer will thereby be afforded an opportunity to make a full and thorough investigation of this question which will require some considerable time to make."

Attached to the pleading was a letter from plaintiff addressed to J. G. Scaife reciting that the unpaid total balance due on his loan was the sum of ninety-two cents. This letter was later repudiated by plaintiff through a telegram to its attorneys which was filed here.

Our thought was that if the loan had been repaid, as alleged, a grave injustice would be perpetrated on defendant by permitting the judgment appealed from to become final, and, accordingly, the requested rehearing was granted on January 28, 1938, for the purpose of allowing the suggested investigation to be made. We had in mind the remanding of the cause for the introduction of evidence relating to the question of payment on defendant's making adequate showing with reference to that matter. Since that time, however, we have been favored with nothing to warrant our taking the action. In fact, during oral argument defense counsel stated that he had been unable to obtain the necessary proof.

The various points listed in the original motion for the rehearing, and discussed in the brief in support thereof, have been given thorough consideration, but our conclusion heretofore reached remains unchanged.

Accordingly, the former judgment of this court is now reinstated and made final.