## David P. Williams *v.* Stephanie Chotard and Husband.

The whole system of administration of minors' estates in Louisiana is opposed to an anticipation of the means of the minor by purchasing property on credit for his account.

Article 334 of the Code, which authorizes, under certain circumstances, the mortgage of a minor's property, has reference to property which belongs to the minor at the time of the application of the tutor, and the convening of the family meeting; but a prospective mortgage of property which it is proposed to acquire, is not authorized by the Article.

The tutor of the minor, defendant, had filed a petition, proposing an investment of funds of his ward, to the amount of three thousand five hundred dollars cash, and the advice of the family meeting and judgment of the court followed that proposition. But the tutor only invested one thousand dollars in cash, and created a debt for the remainder. *By the Court:* This variance would release the defendant from the obligation of paying the price of this purchase, even were it such as would have been legally binding on her, if made in accordance with the terms fixed by the family meeting.

Code 341, 343, 348.

APPEAL from the District Court, Ninth District, Parish of Concordia, *Cooley*, J. *Stacy & Sparrow*, for plaintiff. *Shaw*, for defendants and appellants.

BUCHANAN, J. In order to determine what limits, if any, exist to the authority of a tutor of a minor to purchase real estate for his ward, we must take all the provisions of the Code into consideration in a connected view.

The Article 348 authorizes such purchase to be made by the tutor, upon an order of court, rendered on the advice of a family meeting. But the Article 343 requires the tutor not to encroach upon the capital of his ward, except in one case, which is, the insufficiency of the minor's revenue to procure him subsistence. Again, the Article 341 requires the tutor to make investments for his ward in one case, namely, where the revenues of the minor exceed his expenses. Under the second paragraph of that Article, if the tutor make such investment in the form of a loan, secured by mortgage, it seems that he can do so, without consulting a family meeting, or obtaining an order of court. But if the tutor should judge it more advisable, in the interest of his ward, to invest in the form of a purchase of real estate, rather than in that of a loan upon mortgage, the subsequent Article 348 seems to authorize him to do so, but under restrictions, which are evidently intended as safeguards against an injudicious investment in this form. In one word, the whole system of administration of minor's estates in Louisiana, is opposed to an anticipation of the means of the minor by purchasing property on credit for his account. *Hall* v. *Woods*, 4 An. 86; *Darce* v. *Leaumont*, 5 Rob. 286.

The Article 334 of the Code prohibits the alienation or mortgage of the im-

movable estate of a minor, unless (on the representation of the tutor that it is for the interest of the minor that a sale or mortgage of that kind should be made) a meeting of the family, duly assembled, shall declare that the sale or mortgage is of absolute necessity, or of evident advantage to the minor. We hold that this Article has reference to the property which already belongs to the minor at the time of the application of the tutor and the convening of the family meeting, and that a prospective mortgage of property, which it is proposed to acquire for the minor, is not authorized by the Article.

In the case at bar, real estate has been purchased for minors on a credit, at a price which the evidence clearly demonstrates to have been exorbitant, or to say the least, speculative. A prospective mortgage has been created, in the contract of sale, for the security of the payment of the price. And in addition, what seems entirely without warrant of law, and is not sanctioned by the family meeting, the same contract makes the minors partners with a third party, their vendor, in the cultivation of a cotton plantation. The defendant, who was one of the minors in whose name this threefold contract of purchase, mortgage and partnership has been made, is not bound by it. Apart from its manifold illegalities, it was most evidently injurious as to her.

The evidence shows that the tutor of defendant had under his administration, for many years before this purchase, a cotton plantation, inherited by defendant from her father, which yielded an average crop of eight hundred bales of cotton annually, that her tutor has never rendered her any account. Under this evidence, the tutor should have had in hand, belonging to the defendant, at the time of this purchase, in 1848, a sum very largely exceeding the whole price of the undivided half of the plaintiff's plantation thus purchased. It was the tutor's duty to have invested this fund for defendant, instead of involving her in debt; and it was the duty of the under tutor, and of the family meeting, to have required him to do so.

Thus far we have examined the binding effect of this purchase upon the defendant, with reference to the general authority of the tutor and family meeting under Article 348 of the Civil Code. We have done so because of the importance, as precedents, of all decisions of this court upon the form and effect of acts done in the administration of minors' estates. But in strictness we were not required to go into the general question upon this occasion. For the evidence shows the purchase of real estate, made by *E. G. Howell*, as tutor of defendant, from the plaintiff, on the 9th September, 1848, was not made upon the terms and conditions authorized by the Judge, on the advice of the family meeting.

In his petition presented to the District Court, and filed the 9th September, 1848, the tutor represents that his wards are in the receipt of a considerable sum of yearly income from their estates in the parish of Concordia; that *David P. Williams* has a cotton plantation in said parish, of which he is willing to sell the undivided half, at the rate of thirty dollars per acre, upon the following terms: $3500 cash, of which $1000 to be paid to the vendor, and $2500 to be paid the Mechanics' and Traders' Bank, upon a mortgage held by said bank, etc. That petitioner believes it to be for the interest and evident advantage of the minor to purchase of *Mr. Williams* the half of his plantation on the terms specified, but as petitioner is not permitted to invest the funds of his wards without the advice of a family meeting, he prays that a family meeting be convened to give their advice, and that he be authorized to make said purchase in behalf of said minors, upon the terms and conditions herein set forth.

On the same day, 9th September, 1848, the Clerk of the District Court orders a family meeting to be convened, touching the matters contained in the petition.

On the same day the family meeting is held before the Parish Recorder, and "having carefully deliberated upon the propositions contained in said petition, advise that said tutor make the purchase, as prayed for in his said petition."

On the same day, the proceedings of the family meeting are homologated by the Clerk of the court, and the tutor authorized to make the purchase upon the terms and conditions set forth in the petition.

And finally, on the same day, 9th September, 1848, the plaintiff, by act passed before the Parish Recorder, sells to the minors, *Stephanie Minor* and *Lucy Howell*, represented by their tutor, the undivided half of his plantation, on the following terms and conditions: one thousand dollars in cash, six thousand five hundred and sixty-seven dollars and eleven cents in the assumption of a mortgage debt due by the vendor, to the Mechanics' and Traders' Bank, which the said *Howell*, tutor, binds himself to pay and discharge whenever thereto required by said Bank, etc.

From this recapitulation of the proceedings, it is very evident that the tutor's petition to the court proposed an investment of funds of his wards in hand to the amount of three thousand five hundred dollars cash, and that the advice of the family meeting and the judgment of court followed that proposition. Yet the whole amount of funds of the minors invested was only one thousand dollars, and a debt was created for the remainder.

This variance would release the defendant from the obligation of paying the price of this purchase, even were it such as would have been legally binding upon her, if made in accordance with the terms fixed by the family meeting.

The evidence shows that four thousand one hundred and ninety-two dollars were paid by the minors, or for them, on account of the price of this illegal purchase; one-half of which by defendant. We are of opinion that her claim in reconvention for a restitution of this price from plaintiff is well founded.

It is, therefore, adjudged and decreed, that the judgment of the District Court be reversed, that there be judgment against plaintiff, annulling, so far as the defendant is concerned, the sale of real estate of the 9th September, 1848, by plaintiff to the minors *Stephanie Minor* and *Lucy Howell*, by act before A. C. *Hunter*, Recorder of the parish of Concordia; and that defendant recover of plaintiff two thousand and ninety-six dollars, with interest from the 1st May, 1854, until paid, and costs of both courts.