BRUNOT, J.
 

 The American Cotton Oil Company, as assignee, and the Bank of White Castle, are creditors of the Spiller Sugar Company, Limited. The issues presented in this suit grow out of the assertion 4by these creditors of a superior privilege upon the crops raised by the Spiller Sugar Company, Limited, on the Eureka and Magnolia plantations in Iberville parish in 1920.
 

 Plaintiff is the holder, in due course, of three promissory notes made and issued by the Spiller Sugar Company, Limited, and the suit is for the face value of these notes, with interest, attorney’s fees, and the cost of revenue stamps; for recognition and enforcement by priority and preference of certain liens upon the crops, or upon the proceeds of the crops, raised by the Spiller Sugar Company, Limited, in 1920, for the maintenance of a writ of sequestration, in execution of which 40,000 gallons of molasses were sequestered, and for recognition of its superior lien upon said molasses.
 

 
 *449
 
 The petition alleges that plaintiff acquired the notes sued upon, together with certain seasonably recorded liens upon the crops raised by the Spiller Sugar Company, Limited, on Eureka and Magnolia plantations in 1920, from the Union Seed & Fertilizer Company by assignment and as the result of the absorption of that company by the plaintiff; that notice of plaintiff’s acquisition of said notes and contracts was given to the Spiller Sugar- Company, Limited; that the notes sued upon represent the price of commercial fertilizers purchased by the Spiller Sugar Company, Limited, from plaintiff’s assignor, and used in cultivating the crops on Eureka and Magnolia plantations in 1920; that the Bank of White Castle had knowledge of the existence of the recorded liens asserted by plaintiff; that, with knowledge thereof, the Bank of White Castle made advances to the Spiller Sugar Company, Limited, in 1920, and, as security therefor, accepted and recorded liens upon the crops raised by said company during that year; and that, after said crops were manufactured into sugar and molasses, they were delivered to the Bank of White Castle, were sold, and the proceeds of the sales were received by that bank in payment of the sum of said advances. The prayer of the petition is for judgment against the Spiller Sugar Company, Limited, for the sum sued for, with interest, attorney’s fees, and costs, for judgment against the Bank of White Castle for such sum as it received from the sale of the crops of the Spiller Sugar Company, Limited, in payment of the advances it made to that company in 1920, with interest, attorney’s fees, and costs, for the sequestration of so much of the crops raised on Eureka and Magnolia plantations in 1920 as might be found, and for the maintenance of the sequestration and the recognition and enforcement of the priority and preference of plaintiff’s lien upon the proceeds of the property sequestered. The answer of the Spiller Sugar Company, Limited, admits its indebtedness to plaintiff for the sum sued for. It admits the purchase and use of the fertilizer as alleged in the petition, but it deities, because of error-and want of authority in its president to bind the corporation, the giving of a crop lien to the vendor to secure the payment of the purchase price of the fertilizer.
 

 The Bank of White Castle bonded the sequestration of the molasses, and, in answer to plaintiff’s suit, denies that plaintiff had or has a lien of equal or superior privilege to that asserted by it, and avers that, if plaintiff held a privilege, it was the ordinary privilege conferred by article 3217, C. C., and was inferior to a crop lien. It details the several advances it made to the Spiller Sugar Company, Limited, in 1920, the notes representing these advances, the liens and privileges executed by the Spiller Sugar Company, Limited, in favor of defendant bank to secure their payment, the recordation of the liens, the acceptance of negotiable warehouse receipts, in pledge, by defendant bank, for a loan otherwise unsecured, the total sum advanced by defendant bank to Spiller Sugar Company, Limited, in 1920, the total proceeds of the crops harvested by Spiller Sugar Company, Limited, in 1920, including the proceeds of the sale of the molasses sequestered by plaintiff, the sum of the balance, in principal, growing out of these transactions which is still due the defendant bank, and, averring the denial and error alleged in the answer of the Spiller Sugar Company, Limited, with reference to the liens asserted by plaintiff, the defendant bank prays for the dismissal of plaintiff’s demands, for the dissolution of the writ of sequestration, and for recognition of its asserted lien and privilege as superior to any claim or privilege urged by the plaintiff upon the proceeds of the molasses sequestered in this suit.
 

 The Bank of White Castle filed an amended answer correcting an error in the original answer with reference to the sum total of the proceeds received from the sale of the
 
 *451
 
 crops. Upon these and other incidental pleas, which it is not necessary to state here, the case was tried and judgment was rendered in favor of plaintiff and against the Spiller Sugar Company, Limited, as prayed for in the petition, dismissing the demands of plaintiff for a personal judgment against the Bank of White Castle, maintaining the writ of sequestration, and recognizing and enforcing the recorded liens and privileges of plaintiff and the Bank of White Castle against the proceeds of the sale of the molasses sequestered in the suit, in the following order and rank:
 

 “(1) The claim of plaintiff, American Cotton Oil Company, as recorded, for the sum of $1,-405, with interest at 6 per cent, from April 15, 1920, until paid.
 

 “(2) The claim of plaintiff, American Cotton Oil Company, as recorded, for the sum of $1,-053.75, with interest at 6 per cent, from the 14th day of June, 1920, until paid.
 

 “(3) The claim of .defendant Bank of White Castle, for $17,162.34, with interest at 8 per cent, from December 20, 1920, until paid.
 

 “(4) The claim of plaintiff, American Cotton Oil Company, as recorded, for $1,053.75, with interest at 6 per cent, from June 25, 1920, until paid.
 

 “.(5) Claim of defendant Bank of White Castle, for the sum of $12,000, with interest at 8 per cent, from the 20th day of December, .1920.”
 

 From this judgment, plaintiff and the defendant Bank of White Castle both appealed.
 

 Opinion.
 

 It appears from the record that the Bank of White Castle controlled the disposal of the crops raised on Eureka and Magnolia” plantations in 1920, and received the entire proceeds realized from the sale thereof, amounting to $29,577.96. Of this sum $1,757.60 was deposited in the Hibernia Bank to the credit of the. Spiller Sugar Company, Limited, and was checked out by that company for its own account ; $1,065.33 was applied to the payment of a personal note of T. D. Spiller; $2,032.35, in two i>ayments of $1,742.02 and $290.35, was applied to the payment of interest due on mortgage notes to the holder of the first mortgage on the Spiller Sugar Company’s plantations ; several sums were applied to the payment of insurance premiums, wages of overseer and sugarmaker, freight, cooperage, and barrels. After deducting these sums a balance of $19,976.58 remained, which was applied toward the payment of the indebtedness of the Spiller Sugar Company, Limited, to the Bank of White Castle.
 

 The record discloses that in 1920 the Spiller Sugar Company, Limited, represented by its president, executed three contracts, of similar import, with the Union' Seed & Fertilizer Company for the purchase of fertilizer from the latter company. The first of these contracts is dated March 4, 1920. It was recorded March 6, 1920. The second is dated May 12, 1920, and was recorded May 20, 1920, and the third is dated May 24, 1920, and was recorded June 2, 1920. The purchase price of the fertilizer covered by these contracts is $1,405, $1,053.75, and $1,053.75, respectively.
 

 On May 26, 1920, the Bank of White Castle advanced the Spiller Sugar Company, Limited, $20,000, and accepted a lien and privilege upon all the crops raised upon Eureka and Magnolia plantations during that year as security for that sum. This lien was recorded May 27, 1920, subsequent to the recording of plaintiff’s liens of date March 6 and May 12, 1920, but prior to the recording of plaintiff's lien dated May 24, 1920.
 

 Plaintiff contends that, although the lien in favor of the Bank of White Castle was of record when its asserted lien of May 24, 1920, was recorded, it is entitled to be paid in full out of the proceeds of the crops affected by these liens because the record shows that out of the $20,000 advanced by the Bank of White Castle to the Spiller Sugar Company, Limited, on May 26, 1920, only $16,332 of that sum was passed to the credit of the Spiller Sugar Company, Limited, as advances upon the crops; that, when the advance of $20,000 was made to Spiller Sugar Company, Limited, the Bank of White Castle deducted from this sum an overdraft of $2,837.66, then due the
 
 *453
 
 bank by tbe Spiller Sugar Company, Limited, and two checks drawn by the Spiller Sugar Company, Limited, for $804 and $25, respectively, which were paid by the bank on that day; that the bank received $19,976.58 from the proceeds of the crops affected by the several liens for its own account; that it controlled all of the proceeds of the crops, and paid, or permitted the payment of, several substantial sums thereof in settlement of claims not secured by privilege upon the crops; that the lien of the Bank of White Castle which primes plaintiff’s lien of May 24, 1920, by reason of prior recordation, is limited in amount to the sum actually passed to the credit of the Spiller Sugar Company, Limited, under that contract, to wit, $16,332; that, as the Bank of White Castle received $19,976.58 from the proceeds of the sale of the crops and its lien which primes plaintiff’s last recorded lien is for $16,332, it is apparent that the Bank of White Castle received and has in its possession $3,644.58, which is subject to the payment by preference and priority of plaintiff’s three recorded liens, the sum of which, exclusive of interest, attorney’s fees, and costs, is $3,512,50.
 

 The record sustains the accuracy of plaintiff’s figures and we are of the opinion that, while the judgment appealed from correctly ranks the several privileges in the order in .which they should be paid, the trial judge erred in recognizing the Bank of White Castle as entitled to a privilege superior to the privilege of plaintiff’s, dated May 24, 1920, and recorded a few days later, for any sum greater than $16,332, because the-crop pledge, authorized by Act No. 66 of 1874, does not apply to advances made before the registry of the instrument creating it.
 

 “The right of pledge, in favor of the furnisher of money, resulting from the execution and registry of the written instrument authorized by Act No. 66, * * * of 1874, is intended to bear upon the crop as security for the reimbursement of the money that the planter ‘may require’ for necessary expenses of the crop and plantation, and not as security for money which has already been advanced and used before the execution and registry of the instrument.” National Bank of Commerce v. Sullivan, 117 La. 163, 41 So. 480.
 

 We think the Bank of White Castle is accountable to the lienholders for the sum of $1,757.60 which was deposited, or permitted to be deposited, to the credit of the Spiller Sugar Company, Limited, and to be checked out by that company for its own account, for the $1,065.33 which was applied to the payment of the individual note of T.
 
 X>.
 
 Spiller, and for the $2,032.35 which was applied to the payment of the interest due on the notes secured by mortgage upon the Spiller Sugar Company’s plantations. Of the foregoing disbursements, the first and second were applied to the payment of wholly unsecured claims, and the third, although secured by mortgage, was not a lien upon the crops raised on the mortgaged property. In the case of Levert v. Berthelot, 127 La. 1018, 54 So. 329, this court said:
 

 “Although it was the agreement that this sum would be advanced, as before stated, the defendant, with the consent of interveners, used an amount of $4,729.19, with which defendant paid another debt; that is, interveners, instead of paying themselves and satisfying their claim, permitted the defendant to pay another debt not secured by pledge or privilege on the crop.
 

 “Having received the crop to an amount sufficient to pay their claim, they must be charged in this settlement with the amount received, which went to the payment of an unsecured claim. Gay v. Pike, 30 La. Ann. 1332; Minge & Co. v. Barbre, 51 La. Ann. 1285, 26 So. 180.”
 

 Tbe plaintiff and Bank of White Castle both claim priority under the provisions of Act No. 66 of 1874. It is not necessary to quote the pertinent provisions of that act because they are found in section 1 of the act, and Act Ño. 89 of 1886 provides as follows:
 

 “Section 1. * * * That all privileges and pledges on crops, granted by existing laws of this state, shall be ranked in the following order of preference, viz.:
 

 “First. Privilege of the laborer.
 

 “Second. Privilege of the lessor.
 

 “Third. Privilege of the overseer.
 

 
 *455
 
 “Fourth. Pledges under section 1 of Act No. 66 of 1874, in order of recordation.
 

 “Fifth. Privilege of furnishers of supplies and of money and of the physician.”
 

 In Maxwell-Yerger Co. v. Rogan, 125 La. 15, 51 So. 48, 52, this court held that:
 

 “The recorded pledge of the furnisher of money and supplies primes all unrecorded and all subsequently recorded privileges of such furnishers.”
 

 The record discloses that the board of directors of the Spiller Sugar Company, Limited, did not expressly authorize the signing of any contracts of pledge; neither those with the plaintiff nor those with the Bank of White Castle. Its president testified that he had authority to sign these contracts, but that he signed the contracts of pledge in favor of plaintiff’s assignor through error of their import. Regarding his authority, Mr. Spiller testified as follows:
 

 “Q. You'had authority to do what you pleased with the crops?
 

 “A. Yes; I had a standing authorization to sign a pledge to the fertilizer company if I wanted to.”
 

 It may be noted that the judgment of the lower court was in favor of plaintiff and against the Spiller Sugar Company, Limited, as prayed for in the petition, and this judgment was not appealed from. Under the circumstances, and in the absence of allegations of fraud or misrepresentation, it would be idle to inquire into the authority of the president now. If there had been merit in this defense, it would have, figuratively speaking, demolished the temple and . destroyed the hopes of the Bank of White Castle, as well as those of the plaintiff.
 

 The defense that the liens asserted by plaintiff were executed through error is also untenable. Mr. Spiller testified that he did not read the contracts, at least that part of them which is as follows:
 

 ' “This agreement is subject to the conditions recited on the back hereof, which have been read by both parties.”
 

 He also testified that he did not read the indorsement's on the back of the contract, to which the clause quoted refers.
 

 The section of the indorsement which is pertinent follows:
 

 “This
 
 contract is
 
 subject to the following terms and conditions which are a part hereof, to wit:
 

 “(1) That the party of the second part is the owner of the Eureka plantation, in the parish of Iberville, state of Louisiana, which is bounded on the north by Murrell Pltg. Co., on the south by Nottaway, on the east by Mississippi river, on the west by swamps containing approximately 1,000 acres; and the fertilizers hereby sold party of the second part are to be used by party of the second part during the current season in the cultivation of said plantation, and for the production of a crop of com and cane thereon, and party of the second part specially agrees that, as security for the purchase price of the said fertilizers, the party of the first part shall have a lien, pledge, and privilege upon all of the crops, of any description, raised upon the said plantation during the ensuing crop season, as fully as though the same were actually delivered into the possession of the first party.”
 

 The plaintiff in this case is not chargeable with fraud or misrepresentations, and, in the absence of such charges, the general rule is that the acceptor is deemed to have assented to the stipulations of the contract and is bound thereby. Mere ignorance of its contents or mistake as to its import by one who voluntarily becomes a party to it will not enable him to avoid it. There are exceptions to the rule to which counsel has directed our attention in their able and logically reasoned brief, but the case before us does not fall within any of the exceptions noted. It is our opinion that the general rule applies here. In Murphy v. Hussey, 117 La. 390, 41 So. 692, this court said:
 

 “It is incumbent upon a person signing a contract to read it carefully or to have it read, to stop and listen, and take no chances touching the contents of the act.”
 

 The same principle is announced in Mathew Watson v. Planters’ Bank, 22 La. Ann. 14;
 
 *457
 
 H.
 
 &
 
 C. Newman v. Scarborough, 115 La. 866, 40 So. 248.
 

 The defense that the'stipulations of the indorsement are too vague and uncertain as to terms and figures as to be notice to third parties is answered by the contract and indorsement thereon. The tonnage sold, the priee per ton, and the chemical analysis of the fertilizer are definitely given. There is also the usual provisions found in such contracts. It is true the contracts designate Eureka plantation as the property to be cultivated. It appears' that Eureka was the trade-name under which the Spiller Sugar Company, Limited, disposed of its manufactured products. Its properties were generally known by that name, and the sugar factory was on that plantation. We think the description of the property is sufficient to preserve the recorded crop pledges. Moreover, plaintiff was under no obligation to follow up the fertilizer and acquaint itself with the particular acreage of the purchaser’s property on which each ton of fertilizer was used.
 

 For the reasons stated the judgment of the lower court is amended by reducing the sum adjudged to be due and payable to the Bank of White Castle as of third rank and privilege, from $17,162.34 to $16,332, and subordinating the pledge of said bank, as amended, to the payment and privilege by preference of the several sums adjudged to be due the American Cotton Oil Company, and, as thus amended, the judgment is affirmed at the cost of defendant appellant.