Plaintiff sues to have reformed, or, in the alternative, annulled, what purports to be a sale by him to defendant of one-half interest in and to the oil, gas and other minerals in, under and that may be produced from tracts of land owned by him in Natchitoches Parish, consisting of 137 acres.
Plaintiff attacks the act of sale, and reformation thereof is prayed for on the ground that it does not correctly reflect the agreement between the parties in that, as alleged, defendant agreed to buy and plaintiff agreed to sell him one-half interest in and to the royalty stipulated in plaintiff's favor in an oil and gas lease of the land given by him a few days prior, and like interest in royalty that should be stipulated in his favor in any future lease or leases of said land or any part of it.
It is also alleged that after the agreement was reached for the sale and purchase of the royalty interest, defendant stated that he would prepare proper act of sale for execution on a form he had, and did so; that the act was signed by plaintiff without reading it.
Plaintiff further alleges that it was not his intention nor did he agree to sell to defendant any property right or interest that would deprive him, plaintiff, of the right to receive the entirety of renewal rentals under said lease, and to grant other mineral leases of said land and receive in full the considerations thereof, as well as all renewal rentals paid thereunder.
Answering, defendant avers that he agreed to buy from plaintiff and plaintiff agreed to sell to him one-half interest in *Page 643 
the minerals in and under the land; and that the attacked instrument correctly embodies the terms and conditions of the agreement reached by them. He avers that plaintiff read the instrument before he signed it and fully understood that he was selling minerals and not royalty. He further avers that plaintiff was fully satisfied with the trade until a representative of an oil company discouraged him about it, and encouraged him to seek relief from his contract through the institution of this suit.
Plaintiff's demand was rejected and the suit was dismissed. He seeks relief from this court.
A few days prior to the signing of the attacked instrument, plaintiff executed to one A.A. Fair, representing the Magnolia Petroleum Company, a mineral lease of said 137 acres of land, in which there was stipulated in plaintiff's favor the customary one-eighth royalty in event of production, but this lease had not been filed for record when the sale to defendant was filed. Therefore, the sale to defendant took precedence over the lease. When the record status, as above related, was discovered by the representative of the oil company, he promptly contacted plaintiff and acquainted him with the situation. He told him that he had "messed up things." The oil company's attorney, plaintiff's attorney herein, immediately got in touch (by 'phone) with defendant in the City of Shreveport in the hope of getting from him a lease on his part of the minerals, but nothing came from the effort.
It appears that a short time prior to the date on which the attacked act was signed, the agent of said oil company had procured leases on several tracts of land in the territory in which plaintiff's land is situated with the view of forming a drill block. It, therefore, was of much interest to the oil company in confecting the block to have plaintiff's land included therein on the same basis as lands of other lessors, but with the sale to defendant priming the company's lease this was impossible unless a lease from defendant was gotten. When efforts to do this failed, the present suit was immediately filed.
[1] The essential difference between a sale of a royalty interest and a sale of a mineral interest in land leased for minerals, is that the purchaser of the royalty interest receives nothing under the lease unless profitable production is obtained, whereas under a mineral sale the purchaser, unless there is a stipulation to the contrary, is entitled to receive his proportionate part of renewal rentals under the lease and like proportion of the price of subsequent lease or leases on the land and renewals paid thereunder.
The day the attacked act was signed, defendant drove to plaintiff's home (on the land in question) and began negotiations with him which culminated in execution of the act of sale. Defendant is positive he offered to purchase from plaintiff one-half interest in the mineral rights to the 137 acres and that plaintiff accepted his offer. Defendant knew the land had been previously leased to Mr. Fair; in fact, plaintiff delivered to him a copy of that instrument, from which defendant got the description of the land. Plaintiff, at first, declined to entertain what he says was an offer by defendant to purchase one-half interest in his royalty right, but finally decided to accept the same. While he was changing his clothes preparatory to going with defendant to a notary's, defendant wrote out the instrument in question by filling the blanks in a printed form he had with him. Plaintiff's wife was present when the discussion between the parties was had, and she is positive defendant offered to buy an interest in royalty only. Before leaving plaintiff's place, defendant handed to him the instrument he had prepared, thus giving him opportunity to read it. He can read and write. Plaintiff testified that he "looked it over" but denies that he read it, whereas defendant says he did read it.
When the parties arrived at the store of Mr. Ernest Masson, the notary public, in Cloutierville, he was made acquainted with the purpose of the visit. The act was handed to him and he then and there spread it out on a table, and plaintiff signed it. Two other persons present acted as witnesses. One of them signed an attached affidavit before the notary public, necessary for the registration of the act. The notary public testified that while discussing the sale, defendant stated that he was purchasing "oil royalty" and further added that he would get nothing unless production was obtained. It was agreed by counsel that one of the attesting witnesses to the document, if present, would give the same character of testimony as the notary public gave. *Page 644 
When the act had been signed, defendant wrote out and handed to plaintiff his check for the price, on which was plainly written: "One-Half Minerals Under 137 1/2 Acres." Plaintiff accepted the check without question and immediately asked Mr. Masson, the notary public, if he could cash it, but he declined to do so for lack of funds. At the time of trial of the case (September 17, 1945) the check had not been cashed. It was then tendered back to defendant, who refused it.
It is also worthy of note that on the outside of the instrument signed by plaintiff, in bold face type, is printed the words: "Sale of Mineral Rights."
[2] This case tenders for solution a question not new in the jurisprudence of this state. A question of fact only is involved. If we were bound to determine the issue from the number of witnesses who testified for plaintiff, perforce judgment would go for him, but in solving such a question the number of witnesses for or against a litigant need not necessarily be controlling. The written instrument, as evidence, goes far toward sustaining its own efficacy. This evidence, aided and supported by defendant's own testimony, and attending facts and circumstances, warrants application to the facts of this case the rules of evidence announced in the following cases:
[3] Franks v. Davis Bros. Lumber Co., Ltd., 146 La. 803, 809, 84 So. 101, 103, wherein it was held:
"To say the least, we do not think that he has established the alleged fraud and misrepresentation to such an extent as to relieve himself from the effect of having signed the deed without reading it, even granting that he did so. In the absence of a reasonably strong showing of fraud or error, the document which the parties signed will be presumed to constitute the agreement between them. Watson v. Planters' Bank, 22 La. Ann. 14; Allen, West Bush v. Whetstone, 35 La. Ann. 846."
Rodgers v. S. H. Bolinger Co., Ltd., 149 La. 545, 89 So. 688, in which it was said and held, in discussing fraud and error in written contracts, that:
"Equity may reform even contracts unambiguous in their terms, on clear proof that, through fraud or error, the written instrument has been made to express a different purpose from that which the parties had agreed on and had intended to embody therein; but, to support such relief, there must be clear proof of the antecedent contract and of the error in reducing it to writing."
In Belcher v. Booth et al., 164 La. 514, 520, 114 So. 116, 118, the court discussing the character of proof necessary to sustain allegations of fraud, went further than it had in any case prior to that time or since, so far as we can learn. It said:
"We think that fraud should be proven to that degree of certainty which warrants the conviction of a person who is charged with the commission of a crime, i. e., beyond a reasonable doubt."
[4] Fraud is never presumed. The opposite, that is, that all persons are presumed to be honest and to deal honestly with their fellowmen, is the rule. Concerning the proof necessary to sustain an allegation of fraud, Civil Code, Article 1848, says:
"The maxim that fraud is not to be presumed, means no more than that it is not to be imputed without legal evidence."
Undisputed facts support the contention that defendant made no effort to conceal from plaintiff, the notary, nor from the attesting witnesses, the true character of the instrument assailed. He tendered it to plaintiff for reading and if he did not read it, surely he can blame only himself for not doing so. Matthew Watson v. The Planters' Bank of Tennessee, 22 La. Ann. 15; Allen, West Bush v. Mrs. Mary E. Whetstone et al., 35 La. Ann. 846; Franks v. Davis Bros. Lumber Co., Ltd., supra; Murphy et al v. Hussey, 117 La. 390, 41 So. 692; Snell et al. v. Union Sawmill Co., et al., 159 La. 604, 105 So. 728; American Cotton Oil Co. v. Spiller Sugar Co., Ltd., et al., 161 La. 446,108 So. 878.
[5] Failure to read an instrument or to have it read so that knowledge of all of its recitals may be acquired by those who sign it, does not of itself provide grounds for escape from its legal effect as an obligation. The character of the sale was definitely brought to plaintiff's attention by what was written on the face of the check representing the price. He admits that he then knew the difference in legal effect between a sale of royalty and a sale of mineral rights. *Page 645 
[6] Plaintiff's action is based upon alleged error on his part in signing the sale to defendant, superinduced by defendant's misrepresentation and fraud. It goes without saying that the burden rested upon him to support the predicate of his case by evidence of a convincing character. If this were not the rule in a case of this kind, confidence in and reliance upon written instruments would be materially reduced. Their probative worth would be unstable, and they would not provide that degree of security so necessary in business transactions.
[7] Plaintiff failed to support his attack against the sale to defendant by the quantity and quality of evidence indispensable to the success of an action of this character.
Testimony was offered and admitted to the effect that defendant had been engaged in the business of buying and selling mineral rights, etc., for some twenty-three (23) years; that his reputation for fair dealing is above reproach, and that this suit is the first against him in which the honesty or fairness of his dealings with others has been questioned. It is our opinion that the lower court correctly decided the case.
For the reasons herein assigned, the judgment appealed from is affirmed at plaintiff's cost.