**87 So.2d 312**

**Audley J. SOILEAU and Clabert Duos d/b/a Service Gin Company,**

v.

**M. A. GIBBS, W. M. Yarno and O. S. Firmin.**

No. 42252.

March 26, 1956.

Rehearing Denied May 7, 1956.

Earl Edwards, Marksville, for defendants-appellants.

Fusilier & Vidrine, Ville Platte, for plaintiffs-appellees.

HAMITER, Justice.

Primarily involved in this cause is a promissory note secured by a recorded crop pledge granted pursuant to the provisions of LSA–R.S. 9:4341.

Under date of May 10, 1951 M. A. Gibbs and the Service Gin Company (a partnership composed of A. J. Soileau and Clabert Duos) executed in favor of and gave to the Opelousas Production Credit Association the mentioned note, it reciting a principal amount of $4,500, stipulating interest of 5½% per annum from date and 10% attorney's fees, and being payable on demand after September 16, 1951. As security for the payment of the note, which evidenced advances made to him for 1951 farming operations, Gibbs also executed a written pledge of his crop for that year, the instrument having been duly recorded in the Parish of Evangeline where he resided.

During the months of September and October, 1951 Gibbs sold some of the cotton which he had pledged, William Yarno having bought nine bales for the price of $1,217.13 and O. S. Firmin sixteen bales at $2,533.30. These persons, cotton buyers and residents of Avoyelles Parish, purchased separately from and independently of each other and had no actual knowledge of the crop pledge which Gibbs had granted.

The commission earned by them from the transactions was $1 per bale of cotton.

On November 9, 1951, subsequent to the sales of the pledged cotton by Gibbs to Yarno and Firmin, the partnership of A. J. Soileau and Clabert Duos (doing business as Service Gin Company and co-maker of the promissory note) acquired the note from the Opelousas Production Credit Association by paying the balance then due thereon. The payee's endorsement recited: "Pay to the order of The Service Gin Co. of Ville Platte, without recourse to this Association."

Eighteen days later such partnership and the individual members thereof instituted this suit in which they seek a solidary judgment against Gibbs, Yarno and Firmin (the last two being the purchasers of the pledged cotton from Gibbs) for the balance due on the acquired note. To the petitions Yarno and Firmin first filed numerous exceptions, all of which were overruled. Thereafter they answered. Gibbs did not answer, and a preliminary default was entered against him.

The cause, as between the plaintiffs and the defendants Yarno and Firmin, was tried on its merits by means of a stipulation of counsel, it disclosing the facts hereinabove recited. And shortly after the trial such defendants filed exceptions of no right and no cause of action.

In due course the district court rendered judgment "* * * in favor of Service Gin Company, a partnership of Audley J. Soileau and Clabert Duos, and against the defendants, O. S. Firmin, W. M. Yarno, and M. A. Gibbs, jointly and in solido, for the full sum of Two Thousand One Hundred and Four and 47/100 ($2,-104.47) Dollars, together with five (5%) per cent per annum interest, from October 1, 1951, until paid, plus ten (10%) per cent attorney's fees on the whole amount due, and for all costs of this suit." Firmin and Yarno are appealing.

Appellants, purchasers of the pledged cotton, were decreed solidarily liable with the pledgor Gibbs on the theory that all were joint tort-feasors, the judge (as his written reasons disclose) having applied the doctrine announced in Alexandria Production Credit Association v. Horn, 199 So. 430, decided by the Court of Appeal of the Second Circuit and in which this court denied a writ of certiorari.

In the Horn case it was held that inasmuch as the law of pledge grants to the pledgee of an agricultural crop fictive possession thereof, Act 66 of 1874 and Act 93 of 1922—now LSA–R.S. 9:4341, the pledgor who disposes of any part of the pledged crop to the detriment of the pledgee commits a tort against the latter (evidently this holding also took into consideration LSA–Civil Code Article 3173 reciting that "The debtor who takes away the pledge without the creditor's consent, commits a sort of theft.") The Court of Appeal therein fur-

ther reasoned and held that since a purchaser of the pledged crop is charged with constructive knowledge of the recorded pledge he likewise is an offender of the fictive possession of the pledgee, commits a tort, and becomes a joint tort-feasor with the pledgor.

Referring to the Horn case counsel for appellants, in his brief, states: " * * * we have no quarrel with that decision; we earnestly submit that its principles and law cannot be applied in the case before the Court.

"If the Opelousas Production Credit Association had sued the defendants in this case, separately and individually, the above decision might be applicable.

* * * * * *

"In the case at bar, even if we use the reasoning of the above case, the tort or wrong was committed by the defendants against the Opelousas Production Credit Association and not against plaintiffs herein. It is to be noted that all the cotton purchased by defendants was purchased when the Opelousas Production Credit Association held the note and crop lien of M. A. Gibbs; it was over one month after the last purchase by either of the defendants that the plaintiffs purchased from the Production Credit Association the note of M. A. Gibbs. * * *"

And counsel concludes that these plaintiffs " * * * cannot maintain this action without an express subrogation from the Opelousas Production Credit Association which would give them that right, and no such subrogation is in the record."

This conclusion appears to be sound, and therefore our opinion is that appellants' exception of no right of action should be sustained.

Analogous here are numerous cases decided by this court, involving sales made with broad subrogation rights granted to the vendees, wherein we held that rights of action in tort for damages occurring prior to the sales are personal to the vendors and do not pass to the purchasers without express conventional subrogations. Among such cases are Madison v. Zabriskie, 11 La.Ann. 247, Bradford v. Damare, 46 La. 1530, 16 So. 487, and Gumbel v. New Orleans Terminal Company, 197 La. 439, 1 So.2d 686.

In support of their right to recover herein plaintiffs rely on LSA–Civil Code Article 2161 reciting: "Subrogation takes place of right:

* * * * * *

"3. For the benefit of him who, being bound with others, or for others, for the payment of the debt, had an interest in discharging it." It is contended that as comakers of the note with Gibbs they had an interest in discharging the obligation and that, on paying the debt, they became legally subrogated to all of the rights of the payee. And in support of the contention they cite and quote from Cook v. Crow, La.App., 194 So. 455.

The cited case is not authority for a holding that a payee's personal right of action against a third person not a party to a note is acquired by the purchaser of the note. Therein the court merely held that the purchasers of the involved mortgage notes, who had been accommodation endorsers thereon, were entitled to obtain a judgment against the maker and to have recognized the mortgage given as security.

These appellants in no manner subscribed to the note and pledge on which this suit is predicated. Hence, plaintiffs were not bound with or for them for the payment of the debt as contemplated by LSA–Civil Code Article 2161(3), above quoted. Neither do appellants now have possession of the pledged cotton which they purchased from Gibbs. They are sought to be held liable in an action (whether it be considered one sounding in tort as was held in the Horn case or as having arisen by operation of law because of the provisions of the crop pledge statute) which was a personal right of the payee of the note—the holder thereof at the time the purchases were made. And being of such nature the right of action could not and did not pass to plaintiffs in the absence of a special subrogation to that effect.

For the reasons assigned the judgment appealed from is reversed and set aside, the exception of no right of action is sustained, and plaintiffs' suit as against these appellants is dismissed. Appellees shall pay all costs.