221 So.2d 853 (1969)
CITY BANK AND TRUST COMPANY, Plaintiff-Appellant,
v.
MARKSVILLE ELEVATOR COMPANY, Defendant-Appellee.
No. 2605.
Court of Appeal of Louisiana, Third Circuit.
March 12, 1969.
Rehearing Denied May 7, 1969.
*854 Gahagan & Gahagan, by Marvin F. Gahagan, Natchitoches, for plaintiff-appellant.
Roy & Roy, by Chris J. Roy, Marksville, for defendant-appellee.
Before TATE, SAVOY, and HOOD, JJ.
TATE, Judge.
This is a suit by the holder of a note secured by a crop pledge to recover the unpaid balance of the note. Made defendant is the alleged purchaser of the crops pledged to secure the note. The plaintiff crop-pledgee appeals from the dismissal of its suit.
In denying recovery, the trial court essentially held the proof to be insufficient that the crops purchased by the defendant were those subject to the plaintiff's crop pledge. The trial court also indicated that the plaintiff's crop pledge did not sufficiently describe the crops subject to its security right.
The chief issues of this appeal are formed by the plaintiff bank's contentions that the trial court erred in these holdings.
The litigation centers around a 1967 soybean crop raised by Webster and Carter, two individuals in an informal partnership to grow the crop in question. These farmers had leased 1,200 acres of land in Natchitoches Parish. The written lease had described the tract by government section, with the lessee being described as "Spanish Lake Farms" appearing through Don Ater.
The plaintiff bank contends that the soybeans grown on this land were subject to its crop pledge and were purchased by the defendant. The crop pledge granted by Webster and Carter described the 1967 crops as being grown on property situated in Natchitoches Parish, to-wit:
"400 acres of soybeans and 200 acres of Milo located on the Bustamento Place and the Ferguson Place, near Powhattan, Natchitoches Parish, Louisiana."
This crop pledge instrument was recorded in the appropriate records of Natchitoches Parish.
By written agreement, the defendant, Marksville Elevator Company ("Meco") had purchased from Webster and Carter, with address noted as of Robeline, Louisiana (which is in Natchitoches Parish), a total of 6,000 bushels of soybeans, to be delivered later at either Natchez, Mississippi, or at Port Allen. Meco's employee who issued checks in payment of soybeans purchased from Webster and Carter testified that such soybeans were shipped directly from Natchitoches to Port Allen for delivery for the account of the defendant with Cargill, a general shipper there located.
*855 With regard to the plaintiff's security right, its advances to make the crop were secured by a written and recorded pledge, as provided by LSA-R.S. 9:4341.[1] When properly recorded, a crop pledge is effective against third persons, so that the immediate purchaser of a crop subject to it buys with constructive notice of the pledge and is personally liable to the crop pledgee, at least up to the value of the crop purchased by him.
See: Henry Lochte Co. v. Lefebvre, 124 La. 244, 50 So. 26; Alexandria Production Credit Ass'n v. Horn, La.App.2d Cir., 199 So. 430, certiorari denied. Cf., Soileau v. Gibbs, 229 La. 976, 87 So.2d 312. See also: Comment, Crop Liens and Privileges in Louisiana, 14 Tul.L.Rev. 444 (1940); Note, Crop Liens and Pledges RecordationLiability of Purchasers, 15 Tul.L.Rev. 484 (1941).
In its able opinion, the trial court felt that the description of the land on which the crop was grown was not sufficient to identify the present soybeans as having been grown upon it. It points out that the pledge did not give the ownership of the property leased or an accurate description of it, nor does it identify what portion of the leased premises was to be used for this particular crop. The lease itself was from the "Spanish Lake Farms", without stating the ownership, composition, or any other identification than that this lessor was represented by Don Ater.
The purpose of the land description in a crop pledge is merely to identify the crop pledge with the tract on which grown.[2] This description was adequate for that purpose, especially since this was the only tract on which soybeans were grown by either Webster or Carter in that parish. An identification of the tract by its commonplace name is adequate for the validity of a crop pledge, as against third persons who acquire subsequent interests in or affecting the crops in question. American Cotton Oil Co. v. Spiller Sugar Co., 161 La. 446, 108 So. 878, 882.
Having regard to the temporary nature and purpose of crop pledges, we therefore believe the description to be sufficient to identify the property so as to afford constructive notice of the pledge to purchasers buying soybean crops grown by Webster and Carter in Natchitoches Parish.
*856 Pretermitting whether the following is legally relevant, the evidence further shows: The defendant Meco knew that the soybeans purchased by it had been grown in Natchitoches Parish, where the crop pledge was recorded. In fact, Meco withheld the lessor's share and paid for it by check made and sent to Don Ater, the person signing for the lessor in the lease to Webster and Carter. Had Meco checked the Natchitoches crop pledge records instead of accepting Carter's word that the crop was free of lien, it could have protected itself from claim by the crop pledgee by making its checks payable to the latter as well as to Webster and Carter, the farmers.
We are likewise unable to agree with our trial brother that insufficient proof was made that the beans purchased by the defendant were those grown on the Natchitoches Parish lands and subject to the plaintiff bank's crop pledge.
The defendant itself admits that it made out checks payable to the Natchitoches landlord for soybeans grown in Natchitoches Parish. Webster, the seller-tenant, testified that he had loaded the Natchitoches beans upon trucks bound for the Port Allen consignee, as directed by the defendant. The defendant office employee admits that the checks paid for the purchase of the beans grown by Webster and Carter were for those delivered to the Port Allen consignee. The evidence shows that the only soybeans grown by Webster and Carter in Natchitoches Parish were those subject to the plaintiff's crop pledge.
The mere possibility that the beans may have been grown on property in Concordia Parish cultivated by Carter does not defeat the plaintiff's case, in the absence of any evidence indicating that the beans in question were so derived. Likewise, while even more conclusive proof could have been produced by adducing the testimony of the truck driver who delivered the beans from Natchitoches to the defendant's consignee in Port Allen, nevertheless a party in civil litigation is ordinarily required to prove his case only by a preponderance of the evidence. Gates v. Ashy Construction Co., La.App. 3d Cir., 171 So.2d 742.
The uncontradicted and credible circumstantial evidence sufficiently proves that the soybeans purchased by the defendant Meco were those grown by Webster and Carter on the Natchitoches lands and thus subject to the plaintiff bank's crop pledge. Proof is sufficient to constitute a preponderance of the evidence when, as a whole, it shows that the event or causation sought to be proved is more probable than not. Town of Slidell v. Temple, 246 La. 137, 164 So.2d 276; Naquin v. Marquette Casualty Co., 244 La. 569, 153 So.2d 395. See Sanders, The Anatomy of Proof in Civil Actions, 28 La. L.Rev. 297 (1968).
A final contention advanced by the defendant Meco deserves comment. Meco suggests that the plaintiff bank, as crop pledgee, is required to prove not only the amount of its advances, but also that the monies so advanced were used to make the crop in question.
In so contending, Meco confuses a crop pledge by recorded instrument, as authorized by LSA-R.S. 9:4341, with the privilege under Civil Code Article 3217 against crops of the year for money advanced and used for their cultivation. The latter need not be recorded to be effective against third persons, but the person seeking the privilege must prove that the money advanced was indeed used to make the crop. National Bank of Commerce v. Sullivan, 117 La. 163, 41 So. 480 and 119 La. 935, 44 So. 734; Comment, 14 Tul.L. Rev. 444 (1940).
The Code crop privilege is to be contrasted with the statutory crop pledge provided by LSA-R.S. 9:4341, which the statute provides must be recorded in order for it to affect third persons. However, *857 once recorded, the third person buys with constructive notice that the crop purchased is subject to it, and the person claiming this statutory crop pledge need not prove that the money advanced was actually used for the crop. American Cotton Oil Co. v. Spiller Sugar Co., 161 La. 446, 108 So. 878; Comment, 14 Tul.L.Rev. 444 (1940). To facilitate agricultural credit by relieving the lender of this onerous burden is, in fact, an important reason for the creation of the statutory crop pledge security.
According to the evidence, the balance due from Webster and Carter upon the plaintiff bank's note secured by their crop pledge is $1,755.59, together with interest at the rate of 7% per annum from December 5, 1967, until paid. The note also stipulates that 10% attorney's fees upon unpaid principal and interest are due if the note is placed in the hands of an attorney for collection. The evidence further shows that the defendant Meco purchased $4,008.25 worth of Natchitoches soybeans from Webster and Carter.
For the reasons stated, and under the evidence shown, the plaintiff is entitled to judgment against the defendant for the amount owed upon its crop pledge, since the defendant purchased beans subject to it in excess of the balance due upon it.
Accordingly, the judgment of the trial court is reversed; and it is ordered, adjudged, and decreed that there be judgment in favor of the petitioner, the City Bank & Trust Company, and against the defendant, the Marksville Elevator Company, Inc., for the full sum of One Thousand Seven Hundred Fifty-Five and 59/100 ($1,755.59) Dollars, together with interest at the rate of seven per cent (7%) per annum from December 5, 1967, until paid, together with ten per cent (10%) additional upon the total amount of unpaid principal and interest as attorney's fees, per stipulation in the note sued upon. The defendant-appellee is to pay all costs of the trial court and of this appeal.
Reversed and rendered.

An Application for Rehearing.
En Banc.
PER CURIAM.
Most of the defendant-appellee's contentions in the application for rehearing have been discussed and rejected in our original opinion. However, the application does advance two new contentions which we believe merit discussion.

1.
In our original opinion we held that the pledgee need not prove that the money advanced was actually used for the crop. In support of this contention, we cited American Cotton Oil Co. v. Spiller Sugar Co., 161 La. 446, 108 So. 878 (1926). In its forceful application for rehearing, the defendant-appellee suggests that this interpretation is not authoritative since it concerned the crop pledge act as originally enacted by La. Act 66 of 1874, whereas the present statutory regulation, LSA-R.S. 9:4341, incorporates a provision added in the revision of the 1874 act by La. Act 93 of 1922.
The context of this 1922 revision is as follows: The original 1874 act did not permit a crop to be pledged for a preexisting debt for advances for the crop.[1] National Bank of Commerce v. Sullivan, 117 La. 163, 41 So. 480 (1906); Comment, 14 TulL.Rev. 444, 446 (1940). Act 93 of 1922 provided that the crop pledge could be granted to secure the payment "for advances in money, goods, and necessary supplies that he has received, may receive concurrent therewith, or may thereafter require", thus enlarging the category of debts *858 for which the crop may be pledged to include past advances. 14 Tul.L.Rev. 446.
In conjunction with this enlargement of the scope of the pledge, the 1922 revision added: "* * * provided that such pledge shall secure no debt other than for money, goods, and necessary supplies for the production of such crop * * *."[2] The meaning of this clause, in context, is that the "debt" which the crop pledge is given to secure must be only for past, present, or future advances for the crop year in question. 14 Tul.L.Rev. 446.
Thus, as illustrated by an earlier holding, a crop pledge, which the instrument shows (71 So. 850-851) is given to secure any other indebtedness, is invalid as a pledge as against third persons acquiring possession of the crop, since the pledge is "void on its face." Swift & Co. v. Bonvillain, 139 La. 558, 71 So. 849, 855 (1916). The decision noted that any pledge is ordinarily ineffective against third persons acquiring possession, where there has been no delivery to the creditor, LSA-Civil Code Articles 3158, 3181, and that on its face the crop pledge in question was not given for a purpose authorized by the crop pledge statute permitting such pledges (only) without delivery, when the pledge is properly recorded so as to afford third persons constructive notice.
The 1922 revision merely specified that the past advances authorized to be secured by the crop pledge must likewise be limited to those for monies, goods, and supplies necessary to make the crop of the current year. We find no intent by this 1922 revision to change the former rule that, if the debt is created for the purpose of making the crop, the holder of the pledge is not required to oversee that the money is actually used of such purpose, nor required to prove it was so used in order to have the benefit of his recorded crop pledge, of which the purchaser is charged with constructive notice by reason of its proper recordation.

2.
The second contention made is that the pledge is authorized only for the debt for advances to make the crop. Even conceding that the present crop-purchaser bought with constructive notice of the pledge, it is contended that such pledge secures (as against third persons) only the principal amount of the advances, not the interest and attorney's fees also. It is suggested that, at the least, our original judgment should be amended so as to hold the defendant-appellee liable only for the principal debt due for advances ($1,755.59), rather than for interest and attorney's fees for nonpayment of same, as provided by the note secured by the crop pledge.
However, crop pledges are authorized to secure "debts" for advances to make the crop. In our opinion, the "debt" authorized to be secured by the pledge includes not only the principal amount but also the interest and the usual conjunctive obligations by which creditors are enabled to protect themselves and to collect the money loaned without deduction. Having regard to the purpose of the crop pledge act to enhance and protect the loaning of money for agricultural purposes, we conclude that the legislature's authorization of crop pledges to secure "debts" for agricultural advances included not only debts for the principal, but also for the interest (to earn which was the purpose of the creditor's loan) and for the usual note-provided attorney's fees in event of nonpayment (without which the creditor would be reluctant to lend money).

Conclusion.
For the reasons assigned, the application for rehearing is denied.
Application for rehearing denied.
NOTES
[1] This statute provides: "In addition to the privilege conferred by law, any planter or farmer may pledge or pawn any agricultural crop, either planted and growing or in contemplation of being planted, in order to secure the payment for advances in money, goods, and necessary supplies that he has received, may receive concurrent therewith, or may thereafter require, in order to enable him to prepare the ground, plant and grow the crop, harvest or gather same, or otherwise in the production thereof, by entering into a written pledge of the crop or any portion thereof. The pledge shall secure no debt other than for money, goods, and necessary supplies for the production of the crop for the current year, and for having the pledge recorded in the office of the recorder of mortgages of the parish where the agricultural crop is to be produced, or is being produced. The recorded contract shall confer upon the merchant or other person advancing the money, goods, and necessary supplies for the production of said agricultural product, a right of pledge upon the crop, the same as if the crop had been in the possession of the pledgee, to take rank in accordance with date of filing same for record. The right of pledge thus conferred shall be subordinate to that of the claim of laborers for wages and for the rent upon the land upon which the crop is being produced."
[2] See LSA-R.S. 9:4361, which provides that the recorder of mortgages shall record in the crop pledge book only an abstract of the instrument filed for record, "which abstract shall contain the time of filing for recordation, the name of the pledgor, the name of the pledgee, the date of the pledge, the amount secured, the date when due, the crops pledged, a description of the property on which the crops are to be grown, * * *." (Italics ours.)
[1] The 1874 statute authorized a crop pledge for advances that the farmer "may receive for the production of the crop".
[2] In LSA-R.S. 9:4341, the proviso clause was made an independent sentence: "The pledge shall secure no debt other than for money, goods, and necessary supplies for the crop of the current year * * *." No change of meaning resulted from this editorial revision.